1   Harold Malkin, WSBA No. 30986          THE HONORABLE ROSANNA
    Barbara J. Duffy, WSBA No. 18885        MALOUF PETERSON
2   LANE POWELL PC
    1420 Fifth Avenue, Suite 4200
3   P.O. Box 91302
    Seattle, WA  98111-9402
4   Ph: (206) 223-7000
    Fax: (206) 223-7107
5                                           Michael J. Bronson (Pro Hac Vice)
    Maryann P. Surrick (Pro Hac Vice)       Patrick M. Hagan (Pro Hac Vice)
6   LOCKHEED MARTIN CORP.                    Laurie A. Witek (Pro Hac Vice)
    6801 Rockledge Drive, MP 203            Michael J. Ferrara (Pro Hac Vice)
7   Bethesda, MD 20817                      DINSMORE & SHOHL LLP
    Ph: (301) 897-6988                      255 East Fifth Street, Suite 1900
8                                           Cincinnati, OH 45202
                                            Ph:  (513) 977-8200
9                                           Fax:  (513) 977-8141

10  Attorneys for Defendants Lockheed
    Martin Services, Inc., and Lockheed
11  Martin Corporation

12              UNITED STATES DISTRICT COURT
            EASTERN DISTRICT OF WASHINGTON
13                    AT RICHLAND

14  UNITED STATES OF AMERICA,          )
                                       )
15  Plaintiff,                         )
                                       )
16  v.                                 )
                                       )No. 4:19-cv-05021
17  MISSION SUPPORT ALLIANCE,          )
    LLC, LOCKHEED MARTIN               )LOCKHEED MARTIN
18  SERVICES, INC., LOCKHEED           )CORPORATION'S AND
    MARTIN CORPORATION,                )LOCKHEED MARTIN SERVICES,
19                                     )INC.'S MOTION TO DISMISS
    and                                )
20                                     )10/03/2019 @ 10:00 am
    JORGE FRANCISCO "FRANK"            )Oral Argument Requested
21  ARMIJO,                            )
                                       )
22  Defendants.                        )
                                       )
23  _____       )

MOTION TO DISMISS - i

1    Pursuant to Rules 8, 9, and 12(b)(6) of the Federal Rules of Civil

2    Procedure, Defendants Lockheed Martin Corporation and Lockheed Martin

3    Services, Inc. move to dismiss the United States of America's claims under the

4    False Claims Act (Counts I and II) and Anti-Kickback-Act (Count III) in the

5    United States' Complaint.  The accompanying Memorandum sets forth support

6    for this motion.

7    Dated:  April 23, 2019

8                                           Respectfully submitted,

9                                           LANE POWELL PC

10                                          By      *s/Harold Malkin*
                                            Harold Malkin, WSBA No. 30986
11                                          1420 Fifth Avenue, Suite 4200
                                            P.O. Box 91302
12                                          Seattle, WA  98111-9402
                                            Email: malkinh@lanepowell.com
13                                          Telephone: 206.223.7000
                                            Facsimile: 206.223.7107
14

15                                          DINSMORE & SHOHL

16
                                            By      *s/Michael J. Bronson*
17                                          Michael J. Bronson, Admitted *Pro Hac
                                            Vice*
18                                          255 East Fifth Street, Suite 1900
19                                          Cincinnati, OH  45202
                                            Email: Michael.bronson@dinsmore.com
20                                          Telephone: 513.977.8654

21                                          Attorneys for Defendants Lockheed
                                            Martin Services, Inc., and Lockheed
22                                          Martin Corporation

23

MOTION TO DISMISS - ii

# TABLE OF CONTENTS

**Page**

I.   PRELIMINARY STATEMENT ..................................................................1

II.  FACTUAL BACKGROUND ....................................................................3

    A.   Background on the Relevant Contracts and the Relationships Among Defendants...........................................................................3

    B.   Background Relevant to the Government's AKA Claims...............5

    C.   Background Relevant to the Government's FCA Claims...............7

III. LAW AND ARGUMENT.........................................................................8

    A.   The Government Must Plead with Plausibility and Particularity Under Rules 8 and 9(b) ................................................................8

    B.   The Government Fails to State a Claim Under the AKA ...............9

        1.   The Supreme Court has held that an employee's incentive compensation is not a kickback ...........................................9

        2.   The AKA does not apply to intra-corporate transactions....11

            a.   The AKA targets only anti-competitive conspiracies ..............................................................12

            b.   The intra-corporate conspiracy doctrine applies to the AKA..........................................................................14

            c.   The intra-corporate conspiracy doctrine bars the government's AKA claim........................................17

        3.   The rule of lenity requires narrow construction

MOTION TO DISMISS - iii

**LANE POWELL PC**
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WA  98111-9402
206.223.7000  FAX: 206.223.7107

1         of the AKA..................................................................20

2              4.    The government's AKA claims fail under

3                    Rules 8 and 9(b)..............................................23

4                    a.    The government's AKA claim is implausible...........23

5                    b.    The AKA allegations do not satisfy Rule 9(b)..........26

6         C.    The Government Fails to Plead FCA Theories

7              with Particularity..........................................................28

8              1.    The GSA Schedule allegations do not satisfy Rule 9(b).....28

9              2.    The government's allegations about the inflation of fixed

10                   price and fixed unit rate tasks do not satisfy Rule 9(b).......30

11    IV.    CONCLUSION ........................................................................32

12

13

14

15

16

17

18

19

20

21

22

23

MOTION TO DISMISS - iv

**LANE POWELL PC**
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WA 98111-9402
206.223.7000 FAX: 206.223.7107

# TABLE OF AUTHORITIES

**Page**

## Cases

*Am. Soc'y of Mech. Eng'rs v. Hydrolevel*, 456 U.S. 556 (1982).......................15

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009)............................................. 8, 23, 25, 26

*Barber v. Thomas*, 560 U.S. 474 (2010)...........................................................20

*Bly-Magee v. California*, 236 F.3d 1014 (9th Cir. 2001) ...................................29

*Bly-Magee v. Lungren*, 214 F. App'x 642 (9th Cir. 2006)................................32

*Cafasso v. Gen. Dynamics C4 Sys.*, 637 F.3d 1047(9th Cir. 2011).....................8

*Copperweld Corp v. Independence Tube Corp.*, 467 U.S. 752 (1984) ..14, 15, 17

*CGI Fed., Inc. v. United States*, 779 F.3d 1346 (Fed. Cir. 2015)........................4

*Depot, Inc. v. Caring for Montanans, Inc.*, 915 F.3d 643 (9th Cir. 2019) ..........8

*Doe v. Smith*, 429 F.3d 706 (7th Cir. 2005)..................................................11, 25

*Freeman v. San Diego Ass'n of Realtors*, 322 F.3d 1133

    (9th Cir. 2003).................................................................................15, 18, 19

*Hartman v. Bd. of Trustees*, 4 F.3d 465 (7th Cir. 1993)....................................17

*Leocal v. Ashcroft*, 543 U.S. 1 (2004) ..............................................................20

*Liparota v. United States*, 471 U.S. 419 (1985) ...............................................20

*McDonnell v. United States*, 136 S. Ct. 2355 (2016) ........................................20

*McNally v. United States*, 483 U.S. 350 (1987) ..........................................10, 20

*Midlantic Nat'l Bank v. N.J. Dep't of Envtl. Prot.*, 474 U.S. 494 (1986) ..........16

*Milner v. Dep't of the Navy*, 562 U.S. 562 (2011) ............................................12

MOTION TO DISMISS - v

*Morse Diesel Int'l v. United States*, 66 Fed. Cl. 788 (2005) ........................16, 18

*Mowat Constr. Co. v. Dorena Hydro, Ltd. Liab. Co.*,

    No. 6:14-cv-00094-AA, 2015 U.S. Dist. LEXIS 128058

    (D. Or. Sep. 23, 2015)...................................................................................31

*MSC Indus. Direct Co. v. United States*, 126 Fed. Cl. 525 (2016)......................4

*Nat'l Flood Servs. v. Torrent Techs., Inc.*, No. C05-1350Z,

    2006 U.S. Dist. LEXIS 34196 (W.D. Wash. May 26, 2006) ........................17

*Nev. Rest. Servs., Inc. v. Clark Cnty.*, 981 F. Supp. 2d 947 (D. Nev. 2013)......31

*Presbyterian Church of Sudan v. Talisman Energy, Inc.*,

    453 F. Supp. 2d 633 (S.D.N.Y. 2006) ............................................................6

*Skilling v. United States*, 561 U.S. 358 (2010) ...........................................*passim*

*U-Haul Co. of Nev. v. United States*, No. 2:08-CV-729-KJD-RJJ,

    2012 U.S. Dist. LEXIS 103261 (D. Nev. July 25, 2012) .............................18

*Uchytil v. Avande, Inc.*, No. C12-2091-JCC, 2018 U.S. Dist. LEXIS 31737,

    (W.D. Wash. Feb. 27, 2018) ..........................................................................26

*United States ex rel. Berg v. Honeywell Int'l, Inc.*, No. 3:07-cv-00215,

    2013 U.S. Dist. LEXIS 89197 (D. Alaska June 24, 2013),

    *aff'd in rel. part*, 580 F. App'x 559 (9th Cir. 2014) ....................................31

*United States ex rel. Bly-Magee v. Premo*, 333 F. App'x 169 (9th Cir. 2009) ..26

*United States v. Burger*, No. CR 99-0439 SI, 2000 U.S. Dist. LEXIS

    22066 (N.D. Cal. June 6, 2000)..............................................12, 21, 22, 23, 25

*United States ex rel. Colquitt v. Abbott Labs.*, 858 F.3d 365 (5th Cir. 2017) ....27

MOTION TO DISMISS - vi

*United States ex rel. Dooley v. Metic Transplantation Lab. Inc.*,

    No. CV 13-07039 SJO, 2016 U.S. Dist. LEXIS 192400

    (C.D. Cal. June 6, 2016) ...............................................................27

*United States ex rel. Fisher v. IASIS Healthcare LLC*,

    No. CV-15-00872-PHX-JJT, 2016 U.S. Dist. LEXIS 155517

    (D. Ariz. Nov. 9, 2016)................................................................16

*United States ex rel. Huey v. Summit Healthcare Ass'n*,

    No. CV-10-8003-PCT-FJM, 2011 U.S. Dist. LEXIS 26740

    (D. Ariz. Mar. 3, 2011 ................................................................16

*United States ex rel. Lee v. Corinthian Colls.*, 655 F.3d 984

    (9th Cir. 2011)........................................................................28, 32

*United States v. Nosal*, 676 F.3d 854 (9th Cir. 2012) .........................................22

*United States ex rel. Nunnally v. W. Calcasieu Cameron Hosp.*,

    519 F. App'x 890 (5th Cir. 2013)................................................27

*United States v. Omnicare, Inc.*, 903 F.3d 78 (3d Cir. 2018)............................31

*United States v. Milovanovic*, 678 F.3d 713, 721 (9th Cir. 2012).....................10

*United States ex rel. Patzer v. Sikorsky Aircraft Corp.*, No. 11-C-0560,

    2018 U.S. Dist. LEXIS 121604 (E.D. Wis. July 20, 2018).........11, 12, 17, 24

*United States v. Peterson*, No. CV-11-5137-EFS, 2012 U.S. Dist. LEXIS

    11838 (E.D. Wash. Feb. 1, 2012) ................................................8

*United States ex rel. Ruhe v. Masimo Corp.*, 929 F. Supp. 2d 1033

    (C.D. Cal. 2012)..........................................................................16

MOTION TO DISMISS - vii

*United States v. Savannah River Nuclear Sols., LLC*,

    No. 1:16-cv-00825-JMC, 2016 U.S. Dist. LEXIS 168067

    (D.S.C. Dec. 6, 2016)........................................................................6

*United States v. Stevens*, 559 U.S. 460, (2010) ........................................... 20-21

*United States v. United Healthcare Ins. Co.*,

848 F.3d 1161 (9th Cir. 2016) ......................................................................8, 26

*United States ex rel. Vavra v. Kellogg Brown & Root, Inc.*, 727 F.3d 343

    (5th Cir. 2013)...........................................................................20, 22

*United States ex rel. Vavra v. Kellogg Brown & Root, Inc.*, 848 F.3d 366

    (5th Cir. 2017)...........................................................12, 21, 23, 25

*United States ex rel. Voss v. Monaco Enters.*, No. 2:12-CV-0046-LRS,

    2016 U.S. Dist. LEXIS 86254 (E.D. Wash. July 1, 2016) ..................... 28-29

*Universal Health Servs. v. United States ex rel. Escobar*,

    136 S. Ct. 1989 (2016)................................................................ 29-30

*W. & S. Life Ins. Co. v. Countrywide Fin. Corp.*, No. 2:11-ML-02265-MRP,

    2012 U.S. Dist. LEXIS 184429 (C.D. Cal. June 29, 2012)..........................16

*Ziglar v. Abbasi*, 137 S. Ct. 1843 (2017)...........................................................14

**Rules and Statutes**

Fed. R. Civ. P. 8.....................................................................................8, 24, 25

Fed. R. Civ. P. 9(b) ......................................................................................*passim*

48 C.F.R. § 2.1 ......................................................................................4, 19, 30

MOTION TO DISMISS - viii

1

48 C.F.R. § 16.202-1 ..................................................................5

2    48 C.F.R. § 16.601(c)(2) ...........................................................5

3    18 U.S.C. § 1030 .....................................................................22

4    18 U.S.C. § 1346 .....................................................................10

5    41 U.S.C. § 8701(2) ...............................................................12

6    41 U.S.C. § 8702 .....................................................................12

7    41 U.S.C. § 8706 .....................................................................12

8    41 U.S.C. § 8707 .....................................................................12

9

10    **<u>Other</u>**

11    S. Rep. No. 99-435 (1986) ................................................. 13-15

12    H.R. Rep. No. 99-964 (1986) ................................................13

13    132 Cong. Rec. S16307-01 ..............................................13, 23

14

15

16

17

18

19

20

21

22

23

MOTION TO DISMISS - ix

**LANE POWELL** PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WA  98111-9402
206.223.7000  FAX: 206.223.7107

## I. <u>PRELIMINARY STATEMENT</u>

The Court must dismiss the government's contrived Anti-Kickback Act ("AKA") claim and vague theories of False Claims Act ("FCA") liability because they are inadequately pled and contrary to precedent, statutory intent, and public policy. This case arises from contracts at the Department of Energy ("DOE") Hanford facility between Mission Support Alliance (MSA)—a joint venture in which Lockheed Martin Corporation ("LMC") held an interest—and Lockheed Martin Services, Inc. ("LMSI"), the longstanding information technology ("IT") provider at Hanford. In 2009, DOE competitively awarded a newly-created prime contract to MSA, knowing that MSA's proposal included an LMSI subcontract for the continued provision of IT services. When DOE later consented to the LMSI subcontract, it was well-aware that MSA and LMSI shared LMC as a common parent and that LMC had "seconded" several employees to MSA to help run the joint venture. It also knew that LMSI proposed commercial fixed prices and fixed rates, which always carry the possibility of profit. The government nevertheless now contends that Defendants committed fraud because LMSI profited and attempts to paint the standard compensation LMC paid to its seconded employees as kickbacks.

The government's AKA claim is not legally sustainable. It misconstrues the text and purpose of the AKA and ignores controlling Supreme Court precedent. According to the government, LMC paid kickbacks to seconded employees when it compensated them under its customary, publicly available, performance-based compensation plan. But Congress's intent in enacting the AKA

MOTION TO DISMISS - 1

**LANE POWELL PC**
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WA  98111-9402
206.223.7000  FAX: 206.223.7107

was to prohibit "commercial bribes" exchanged between two independent and unaffiliated actors, not compensation paid by a company to its employees. The Supreme Court echoed this Congressional intent in *Skilling v. United States*, holding that corporate incentive compensation is not a kickback or bribe because it does not involve a transaction with a third party. 561 U.S. 358, 413 (2010). Additionally, the intra-corporate conspiracy doctrine, which legally precludes a conspiracy among affiliates or their employees, and the rule of lenity, which requires that the public receive fair warning that conduct is illegal, also compel dismissal of the government's AKA count. Finally, even if a company could pay a kickback to its own employees, the government fails to plead facts that establish a plausible or particular AKA claim.

The government's FCA claims are *post hoc*, outcome-driven, and have not been pled with the particularity required by Fed. R. Civ. P. 9(b). The FCA allegations center on whether and to what extent LMSI was entitled to earn profit. The government concedes that LMSI and MSA repeatedly identified a valid contractual and regulatory basis supporting LMSI's ability to earn profit. Compl., ECF No. 1, ¶¶ 64, 75. This concession precludes any straightforward pricing claim, and the government does not allege that DOE or anyone else had a problem with the quality of LMSI's services. Instead, ten years after the prime contract award, the government makes a hodgepodge of disjointed and confusing FCA allegations unified only by the assertion that LMSI made *too much* profit. As MSA's motion to dismiss explains, the government fails to plead the required elements of scienter and materiality for any of its FCA claims. For efficiency, this

MOTION TO DISMISS - 2

LANE POWELL PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WA  98111-9402
206.223.7000  FAX: 206.223.7107

motion focuses on two of the government's FCA theories—(1) that LMSI made misrepresentations about an unspecified number of unspecified services and materials, and (2) that LMSI's price inflation on some unspecified tasks led to unspecified false statements by unnamed people at unidentified times. Both of these theories fall far short of the Fed. R. Civ. P. 9(b) pleading standard.

## II. <u>FACTUAL BACKGROUND</u>

### A. Background on the Relevant Contracts and the Relationships Among Defendants.

In May 2007, DOE issued a Request for Proposals ("RFP") for a Hanford infrastructure support services prime contract known as the Mission Support Contract ("MSC"). Compl. ¶ 35. LMC formed MSA to compete for the MSC, *id.* ¶ 40, and throughout the relevant period, LMC was one of three MSA members. *Id.* ¶ 8. As part of its proposal, MSA identified LMSI as the subcontractor responsible for the IT, or Information Resources/Content Management ("IR/CM"), scope of work. *Id.* ¶ 43. DOE awarded the MSC to MSA in April 2009. *Id.* ¶ 48.

The government affirmatively describes LMC, LMSI, and MSA as affiliates, *id.* ¶¶ 42, 117, 124, and notes that DOE was aware of and focused on these affiliations throughout the relevant period, *id.* ¶¶ 39, 64, 83. This alleged affiliate relationship is essential to the government's position that LMSI was not permitted to profit; at the same time, it makes the kickbacks the government alleges a legal impossibility.

Both DOE's RFP and Clause B.11 of the MSC specifically exempt commercial items and services from a prohibition on "subcontractor fee" for prime

MOTION TO DISMISS - 3

**LANE POWELL PC**
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WA  98111-9402
206.223.7000 FAX: 206.223.7107

contractor affiliates.  *Id.* ¶ 37 (citing Clause B.11).[1]  The Complaint acknowledges that MSA and LMSI repeatedly identified the LMSI subcontract as commercial and pointed to commerciality as an applicable exception in Clause B.11.[2]  *See, e.g.*, *id.* ¶¶ 37, 64, 75.  It also acknowledges that MSA and LMSI cited to LMSI's General Services Administration ("GSA") Schedule[3] and LMSI's work for

---

[1] Although neither the Complaint nor Clause B.11 defines "affiliate," the Federal Acquisition Regulation ("FAR") states that an "affiliate" includes any "associated business concerns or individuals if, directly or indirectly (1) [e]ither one controls or can control the other; or (2) [a] third party controls or can control both."  48 C.F.R. § 2.1.

[2] Clause B.11 incorporated the FAR's definitions of commercial items and services.  *Id.* ¶ 37.  Generally, a commercial item is an item "of a type customarily used by the general public or by non-governmental entities for purposes other than governmental purposes" that has been (1) "sold, leased, or licensed to the general public," or (2) "offered for sale, lease, or license to the general public."  48 C.F.R. § 2.1.  Commercial services are those "of a type offered and sold competitively in substantial quantities in the commercial marketplace based on established catalog or market prices for specific tasks performed or specific outcomes to be achieved and under standard commercial terms and conditions."  *Id.*

[3] The GSA Schedule program "provides federal agencies with a simplified process for obtaining commonly used commercial supplies and services."  *MSC Indus. Direct Co. v. United States*, 126 Fed. Cl. 525, 528 (2016); *see also CGI Fed., Inc.*

MOTION TO DISMISS - 4

LANE POWELL PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WA 98111-9402
206.223.7000 FAX: 206.223.7107

commercial (*i.e.*, non-government) customers as evidence that LMSI's services were commercial. *See, e.g.*, *id.* ¶ 111.

After the MSC award, MSA, LMSI, and DOE negotiated the terms of the IR/CM subcontract for approximately 18 months. *See generally id.* ¶¶ 52-113. DOE conditionally consented to the subcontract in February 2011. *Id.* ¶ 114. The final subcontract included three types of pricing: (1) fixed prices, which the government describes as "an agreed upon total price that is not subject to any adjustment based on the contractor's costs incurred while performing the contract"; (2) fixed unit rates, which the government describes as "a contract based on estimated quantities of items and agreed upon unit rates, including labor rates"; and (3) time and materials, which the government describes as "a contract used to acquire goods or services on the basis of direct labor hours at a specified fixed hourly rate with goods/materials priced at cost plus, potentially, material handling costs." *Id.* ¶¶ 26, 60. The possibility of profit is permissible—and inherent—with each of these pricing approaches. *See* 48 C.F.R. § 16.202-1 (fixed pricing "places upon the contractor maximum risk and full responsibility for all … resulting profit or loss"); § 16.601(c)(2) (time and materials pricing includes "fixed hourly rates that include wages, overhead, general and administrative expenses, and profit").

### B.    Background Relevant to the Government's AKA Claims.

The government alleges that LMC paid kickbacks to LMC employees

---

*v. United States*, 779 F.3d 1346, 1352 (Fed. Cir. 2015) (explaining that supplies sold through the GSA Schedule program are commercial).

MOTION TO DISMISS - 5

LANE POWELL PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WA 98111-9402
206.223.7000 FAX: 206.223.7107

"seconded" to MSA, but it does not allege that any payments to the seconded employees were under-the-table, provided by third parties, or outside the normal course of business. Instead, the government asserts that LMC used its Management Incentive Compensation Program ("MICP") to reward seconded employees for helping "to enhance LMSI and LMC's bottom line through the LMSI subcontract to MSA." Compl. ¶ 123. In its Motion Requesting Judicial Notice, ECF No. 36, LMC seeks judicial notice that: (1) from 2009–2016, LMC had a publicly disclosed MICP plan (the "Plan"); (2) a stated purpose of the Plan was to "[e]stablish performance goals within the meaning of Section 162(m) of the Internal Revenue Code;" (3) the Plan states that it was open only to LMC employees; and (4) the Plan provided a formula to determine MICP payments that accounted for individual and organizational performance. The government does not allege that the Plan violated applicable regulations or that LMC deviated from the Plan terms in awarding the MICP payments at issue.

The Complaint does not define "secondment," which typically involves one company in a corporate family assigning an employee to an affiliated company while continuing to maintain responsibility for the employee's salary and benefits. *See, e.g., Presbyterian Church of Sudan v. Talisman Energy, Inc.*, 453 F. Supp. 2d 633, 649 (S.D.N.Y. 2006) (explaining that "secondment" refers to the assignment of an employee to an affiliated company). As the government itself has noted elsewhere, it is both common and beneficial for DOE prime contractors to use "loaned" employees from their owners and affiliates. *See United States v. Savannah River Nuclear Sols., LLC*, No. 1:16-cv-00825-JMC, 2016 U.S. Dist.

MOTION TO DISMISS - 6

**LANE POWELL PC**
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WA 98111-9402
206.223.7000 FAX: 206.223.7107

LEXIS 168067, at *4 (D.S.C. Dec. 6, 2016) (citing the government's complaint for the proposition that the use of loaned employees from a corporate parent is a permissible way for prime contractors to obtain "critical skills needed in the performance of the [] contract").

LMC seconded Frank Armijo to MSA twice:  first to serve as MSA's vice president for IR/CM, and later to serve as MSA's president.  Compl. ¶¶ 11-12. During his second secondment, the government alleges that Armijo retained his position as an LMC vice president for IT.  *Id.* ¶ 11.  LMC also seconded Rich Olsen to serve as MSA's chief financial officer.  *Id.* ¶ 12.  The Complaint mentions two other seconded employees—Todd Eckman and David Ruscitto—but does not describe their job titles, responsibilities, actions, or the compensation they received.  *Id.* ¶ 123.

### C.      Background Relevant to the Government's FCA Claims.[4]

The government appears to allege, with no supporting facts, that Defendants misled DOE because at least some of LMSI's services and all of its materials were not on LMSI's GSA Schedule.  *Id.* ¶¶ 64, 75.  It also asserts conclusory, shotgun allegations that LMSI inflated the price of unspecified fixed unit rate and fixed price tasks in the subcontract because LMSI's internal estimates called for fewer

_____

[4] MSA's motion to dismiss explains why the government's failure to plead the essential elements of scienter and materiality is fatal to each of its FCA claims.  The Complaint also fails to state FCA claims based on two theories for the additional reasons set forth in this motion.

MOTION TO DISMISS - 7

1  employees than the estimate proposed to DOE, *id.* ¶¶ 96–98, MSA and LMSI

2  double-billed DOE for union labor, *id.* ¶ 99, and LMSI billed for costs outside its

3  work-scope, *id.* ¶ 100.

4  **III.  LAW AND ARGUMENT**

5      **A.    The Government Must Plead with Plausibility and Particularity**

6          **Under Rules 8 and 9(b).**

7      A plaintiff asserting AKA and FCA claims must satisfy the pleading

8  requirements of both Fed. R. Civ. P. 8 and 9(b).  *Cafasso v. Gen. Dynamics C4*

9  *Sys.*, 637 F.3d 1047, 1054-55 (9th Cir. 2011) (FCA claims); *United States v.*

10  *Peterson*, No. CV-11-5137-EFS, 2012 U.S. Dist. LEXIS 11838, at *5 (E.D. Wash.

11  Feb. 1, 2012) (FCA and AKA claims).  "To survive a motion to dismiss, the

12  complaint 'must contain sufficient factual matter, accepted as true, to state a claim

13  to relief that is plausible on its face.'"  *Depot, Inc. v. Caring for Montanans, Inc.*,

14  915 F.3d 643, 652 (9th Cir. 2019) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678

15  (2009)).  Under Rule 8, a "claim has facial plausibility when the plaintiff pleads

16  factual content that allows the court to draw the reasonable inference that the

17  defendant is liable for the misconduct alleged."  *United States v. United*

18  *Healthcare Ins. Co.*, 848 F.3d 1161, 1179-80 (9th Cir. 2016) (quoting *Iqbal*, 556

19  U.S. at 678).  To satisfy Rule 9(b), a plaintiff "must state with particularity the

20  circumstances constituting fraud" by alleging "the who, what, when, where, and

21  how of the misconduct charged, including what is false or misleading about a

22  statement, and why it is false."  *Id.* at 1180 (internal citations omitted).  The Ninth

23  Circuit has explained that Rule 9(b) serves two policy goals:  (1) to ensure that

MOTION TO DISMISS - 8

**LANE POWELL** PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WA  98111-9402
206.223.7000  FAX: 206.223.7107

defendants receive "notice of the particular misconduct … alleged … so that they can defend against the charge" and (2) "to deter the filing of complaints as a pretext for the discovery of unknown wrongs, to protect defendants from the harm that comes from being subject to fraud charges, and to prohibit plaintiffs from unilaterally imposing upon the court, the parties and society enormous social and economic costs absent some factual basis." *Id.*

### B.    The Government Fails to State a Claim Under the AKA.

The government's AKA theory fails for numerous reasons.  First, the Supreme Court has held that employee incentive compensation is not a kickback or bribe because it does not involve a transaction with an independent third party. Second, the AKA claim is inconsistent with the text, history, and purpose of the AKA and with the intra-corporate conspiracy doctrine, which provides that corporations cannot conspire with their own employees or affiliates.  Third, because the AKA is a criminal statute, the rule of lenity requires a narrow construction to ensure that the public receives fair notice of conduct that may be criminal.  Finally, the government has not met the applicable pleading standard.[5]

#### 1.    The Supreme Court has held that an employee's incentive compensation is not a kickback.

The Supreme Court has considered and rejected the government's theory that an employee's incentive compensation can constitute a "kickback."  *Skilling*,

---

[5] LMC and LMSI also adopt and incorporate Armijo's arguments for dismissal of the AKA claim.

MOTION TO DISMISS - 9

**LANE POWELL PC**
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WA  98111-9402
206.223.7000  FAX: 206.223.7107

561 U.S. at 413.   In *Skilling*, the government charged the defendant with committing criminal "honest services" wire fraud based on his participation in schemes to manipulate and misrepresent his employer's financial results to increase the value of his bonuses and stock options. *Id.* at 369, 413.  The Court held that the honest services fraud statute, 18 U.S.C. § 1346, applies only to bribes and kickbacks, and it drew support from a comprehensive review of relevant authorities, including the AKA.  *Id.* at 409, 412-13 (incorporating the AKA's definition of "kickback").   Comparing the *Skilling* allegations to a "classic kickback scheme"—in which a public official "conspire[s] with a third party" to receive a share of that third party's profits—the Court held that, as a matter of law, the government could not establish a § 1346 claim because the only payments at issue were the defendant's "salary[,] bonuses[,]" and stock options. *Id.* at 410, 413 (finding that "a reasonable limiting construction of § 1346 must exclude this amorphous category of cases") (citing *McNally v. United States*, 483 U.S. 350, 352-53 (1987)).  The Court made clear that an individual must "solicit[] or accept[] side payments from a third party" to engage in a kickback or bribe.  *Id.* at 413; *see also United States v. Milovanovic*, 678 F.3d 713, 721 (9th Cir. 2012) (recognizing that Skilling's "alleged misconduct entailed no bribe or kickback").

The government's AKA claim cannot survive under *Skilling*.  The Complaint does not allege that Armijo—or any other seconded employee— solicited or accepted a side payment from a third party.  To the contrary, here, as in *Skilling*, there is no unaffiliated third party involved with the alleged kickbacks in question.  Compl. ¶¶ 11–12 (acknowledging that Armijo and Olsen were LMC

MOTION TO DISMISS - 10

employees); ¶ 117 (describing MSA as "LMC's affiliate"); ¶ 9 (describing LMSI as "a wholly owned subsidiary of LMC").  The government does not suggest that the purported kickback recipients were given any financial benefit beyond employee compensation.  *See id.* ¶ 118 (alleging that LMC used its MICP to reward executives); ¶ 121 (identifying the alleged kickback to Armijo as "cash[,] … LMC stock[,] and other compensation [provided] through LMC's MICP").  Because the *Skilling* Court already rejected the premise that the incentive compensation a company pays its executives can constitute a bribe or kickback, the government's AKA claim must be dismissed.

## 2.    The AKA does not apply to intra-corporate transactions.

The AKA targets "commercial bribery," which requires two independent, unaffiliated parties to exchange value to become united in a common, anti-competitive goal.  Nothing in the AKA's text, legislative history, or prior application suggests that it governs the conduct alleged here.  To plead a viable AKA claim, the government needed to allege that LMC and MSA were independent entities with distinct economic interests.  *See United States ex rel. Patzer v. Sikorsky Aircraft Corp.*, No. 11-C-0560, 2018 U.S. Dist. LEXIS 121604, at *21-22 (E.D. Wis. July 20, 2018) (observing that the AKA requires that "each party to the kickback transaction is acting independently").  It has done the exact opposite.  The government repeatedly contends that LMC, MSA, and LMSI were affiliates acting in concert.  Accepting this as true for purposes of this motion, as Defendants and the Court must, this collaborative affiliate relationship renders the alleged kickbacks legally impossible.  *See Doe v. Smith*, 429 F.3d 706, 708 (7th

MOTION TO DISMISS - 11

**LANE POWELL PC**
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WA  98111-9402
206.223.7000 FAX: 206.223.7107

Cir. 2005) ("[L]itigants may plead themselves out of court by alleging facts that defeat recovery."); *see also Patzer*, No. 11-C-0560, 2018 U.S. Dist. LEXIS 121604, at *21-22 (dismissing as implausible an allegation of a kickback between affiliated prime and subcontractors).

### a. The AKA targets only anti-competitive conspiracies.

The AKA defines a "kickback" as the attempted or actual solicitation or provision of something of value "to improperly obtain or reward favorable treatment in connection with a prime contract or a subcontract relating to a prime contract." 41 U.S.C. § 8701(2); *see also* 41 U.S.C. § 8702 (prohibited conduct); § 8706 (civil actions); § 8707 (criminal penalties). Congress did not define the terms "improperly" or "favorable treatment," and courts have held that the absence of statutory definitions and the general nature of these terms create ambiguity. *See, e.g.*, *United States ex rel. Vavra v. Kellogg Brown & Root, Inc.*, 848 F.3d 366, 378 (5th Cir. 2017) (finding the definition of "kickback" to be ambiguous and applying the rule of lenity); *United States v. Burger*, No. CR 99-0439 SI, 2000 U.S. Dist. LEXIS 22066, at *15 (N.D. Cal. June 6, 2000) (same). Accordingly, courts have frequently resorted to analyzing the AKA's legislative history to discern Congress's intent. *Id.*; *see also Milner v. Dep't of the Navy*, 562 U.S. 562, 572 (2011) (explaining that "clear evidence of congressional intent" in the legislative history "may illuminate ambiguous text").

The AKA's legislative history makes clear that Congress intended to target behavior that is (1) anti-competitive, and (2) conspiratorial. Congress's aim was to eliminate "commercial bribery" by prohibiting kickbacks, which "destroy

MOTION TO DISMISS - 12

LANE POWELL PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WA 98111-9402
206.223.7000 FAX: 206.223.7107

1   competition." H.R. Rep. No. 99-964 at 4 (1986). The sponsor of the Senate bill

2   that overhauled the AKA in 1986 explained that the gravamen of a kickback is the

3   combination of two independent parties in a common course of anti-competitive

4   conduct. *See* 132 Cong. Rec. S16307-01 (Statement of Sen. Levin) (explaining

5   that an AKA violation requires proof of anti-competitive intent because "the

6   Government must prove . . . that the reason one person provided something of

7   value to another was to improperly influence a procurement decision"); *see also*

8   H.R. Rep. No. 99-964 at 4 (1986) (noting that prosecutors often use "conspiracy

9   statutes to prosecute persons involved in kickback schemes"); *Skilling*, 561 U.S. at

10   410 (describing a "classic kickback scheme" in which a procurement official

11   "*conspired with a third party*" to share commissions (emphasis added)).

12       The government cites the very legislative history that precludes its kickback

13   theory. The Complaint explains that the AKA targets anti-competitive conduct

14   ("commercial bribery") and requires two independent parties. Compl. ¶ 17 (stating

15   the AKA applies when "contractors or their employees provide things of value *to*

16   *other contractors or their employees* in return for favorable treatment on

17   government contracts and subcontracts" (citing H.R. Rep. No. 99-964 at 5 (1986)

18   (emphasis added))). Though the AKA's legislative history recounts numerous

19   examples of potential kickbacks from an extensive Senate investigation into

20   kickbacks in government contracting, it contains no indication that Congress

21   intended to reach employee compensation or intra-corporate transactions. *See* S.

22   Rep. No. 99-435 at 3-7 (1986) (discussing the Senate's investigation); H.R. Rep.

23   No. 99-964 at 5-7 (1986) (discussing the Senate's "massive investigation" and

MOTION TO DISMISS - 13

1    testimony from the Department of Defense Office of Inspector General).  Rather,

2    Congress was focused on creating incentives for companies to monitor their

3    employees to prevent secret kickbacks—not on policing companies' internal

4    compensation programs.  *See, e.g.*, S. Rep. No. 99-435 at 2 (1986) (noting that

5    prime contractor employees "usually" accept kickbacks and provide favorable

6    treatment "without informing or involving their employers"); at 14 (observing that

7    "employees … who participate in kickback schemes usually hide their illegal

8    activities from the prime contractor").

9         **b.    The intra-corporate conspiracy doctrine applies to the**

10             **AKA.**

11        The principle that corporations cannot conspire with their employees or

12    affiliates—known as the intra-corporate conspiracy doctrine—is widely accepted

13    and pre-dates the 1986 amendments to the AKA.  The doctrine is based, in part, on

14    common law principles of agency.  Courts have explained that a conspiracy

15    between a corporation and its employees, or among employees of the same

16    corporation, is legally impossible because the acts of corporate employees "are

17    attributed to their principal," precluding "an agreement between two or more

18    separate people."  *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1867 (2017); *see also* S. Rep.

19    No. 99-435, at 15 (stating in the AKA's legislative history that the "longstanding

20    doctrine of *respondeat superior*" should apply to hold "employers responsible for

21    the conduct of their employees").

22        In addition to drawing from corporate agency, the intra-corporate conspiracy

23    doctrine has roots in antitrust law.  In *Copperweld Corp v. Independence Tube*

MOTION TO DISMISS - 14

**LANE POWELL PC**
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WA  98111-9402
206.223.7000  FAX: 206.223.7107

1    *Corp.*, the Court held that a parent and wholly-owned subsidiary could not

2    conspire or combine in violation of § 1 of the Sherman Act because they always

3    "share a common purpose whether or not the parent keeps a tight rein over the

4    subsidiary."  467 U.S. 752, 771 (1984) (noting that the idea of a conspiratorial

5    agreement "between a parent and a wholly owned subsidiary lacks meaning").

6    Citing the statute's prohibition against any "combination … or conspiracy in

7    restraint of trade[,]" the Court explained that agreements between a parent and

8    subsidiary did not constitute the "concerted activity" Congress intended to prevent

9    because such agreements did not "deprive[] the marketplace of the independent

10   centers of decision-making that competition assumes and demands."  *Id.* at 768-69;

11   *see also Freeman v. San Diego Ass'n of Realtors*, 322 F.3d 1133, 1147 (9th Cir.

12   2003) ("Section 1, like the tango, requires multiplicity:  A company cannot

13   conspire with itself." (citing *Copperweld*, 467 U.S. at 769)).

14        Congress had the benefit of *Copperweld* when it amended the AKA in 1986,

15   but it said nothing suggesting an intent to depart from the Court's holding.  Instead,

16   Congress cited with approval another Supreme Court decision treating companies

17   and their employees and affiliates as a single entity rather than as independent

18   actors.  *See* S. Rep. No. 99-435, at 15 (1986) (applying the common law agency

19   principle of vicarious liability in the Sherman Act context to "encourage

20   supervision of agents to deter … misconduct") (referencing *Am. Soc'y of Mech.*

21   *Eng'rs v. Hydrolevel*, 456 U.S. 556, 572 (1982)).  In these circumstances, it would

22   be improper to infer that Congress intended the AKA to apply to intra-corporate

23   conduct because "[t]he normal rule of statutory construction is that if Congress

MOTION TO DISMISS - 15

1    intends for legislation to change the interpretation of a judicially created concept, it

2    makes that intent specific."  *Midlantic Nat'l Bank v. N.J. Dep't of Envtl. Prot.*, 474

3    U.S. 494, 501 (1986).

4         Courts within and outside this circuit have expressly applied the intra-

5    corporate conspiracy doctrine to the FCA and many other statutes.  *See, e.g.*,

6    *United States ex rel. Ruhe v. Masimo Corp.*, 929 F. Supp. 2d 1033, 1037-38 (C.D.

7    Cal. 2012) (applying the intra-corporate conspiracy doctrine to the FCA because

8    "the logic of the doctrine comes directly from the definition of a conspiracy"

9    (internal quotation omitted)); *United States ex rel. Fisher v. IASIS Healthcare LLC*,

10    No. CV-15-00872-PHX-JJT, 2016 U.S. Dist. LEXIS 155517, at *56-57 (D. Ariz.

11    Nov. 9, 2016) (collecting FCA cases applying the intra-corporate conspiracy

12    doctrine); *see also W. & S. Life Ins. Co. v. Countrywide Fin. Corp.*, No. 2:11-ML-

13    02265-MRP, 2012 U.S. Dist. LEXIS 184429, at *39-46 (C.D. Cal. June 29, 2012)

14    (reviewing the scope of the doctrine under the laws of various states and applying

15    it to preclude a civil conspiracy claim under Ohio law).[6]  Although courts have not

16    yet applied the intra-corporate conspiracy doctrine by name in an AKA case, they

17    have applied the doctrine's core principles.  *See, e.g.*, *Morse Diesel Int'l v. United*

18    _____

19    [6] The fact that the Ninth Circuit has not applied the intra-corporate conspiracy

20    doctrine to criminal statutes is irrelevant when considering the application of the

21    doctrine to the parallel civil statute.  *See United States ex rel. Huey v. Summit*

22    *Healthcare Ass'n*, No. CV-10-8003-PCT-FJM, 2011 U.S. Dist. LEXIS 26740, at

23    *20-21 (D. Ariz. Mar. 3, 2011).

MOTION TO DISMISS - 16

1   *States*, 66 Fed. Cl. 788, 799 (2005) (holding that a 50/50 joint venture and one of

2   the two non-majority parent corporations were a single "person" under the AKA).

3           c.      **The intra-corporate conspiracy doctrine bars the**

4                   **government's AKA claim.**

5           The government's AKA claim is precluded by the intra-corporate conspiracy

6   doctrine and should be dismissed.   A "kickback" requires that "each party to

7   the kickback transaction is acting independently and could choose or could have

8   chosen not to deal with the other."  *Patzer*, 2018 U.S. Dist. LEXIS 121604, at *21-

9   22.   In the kickback scheme the government has pled, the recipients of the alleged

10  kickback had no such choice; they were LMC employees receiving standard

11  compensation from LMC.   The government's theory is inconsistent with "[t]he

12  general rule … that employees cannot conspire with their employer" because the

13  necessary "plurality of actors" is missing.   *See Nat'l Flood Servs. v. Torrent

14  Techs., Inc.*, No. C05-1350Z, 2006 U.S. Dist. LEXIS 34196, at *16 (W.D. Wash.

15  May 26, 2006) (citing *Copperweld*, 467 U.S. at 769); *see also Skilling*, 561 U.S. at

16  413 (holding that a kickback requires a payment to an independent third party).[7]

17  _____

18  [7] The Complaint does not allege that Armijo or any other employees acted to

19  advance a financial interest separate from LMC's.   Thus, this case does not fall

20  within a narrow exception to the intra-corporate conspiracy doctrine, recognized by

21  some courts outside the Ninth Circuit, for employees with an "independent

22  personal stake" in the conspiracy.   *See, e.g.*, *Hartman v. Bd. of Trustees*, 4 F.3d

23  465, 470 (7th Cir. 1993).   As the government itself has argued, "potential bonuses,

MOTION TO DISMISS - 17

LANE POWELL PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WA  98111-9402
206.223.7000  FAX: 206.223.7107

1    That the employees in question were seconded to MSA, a joint venture in

2  which LMC was one of three owners, does not change the analysis.  The Ninth

3  Circuit has been clear that *Copperweld* extends to a host of corporate structures

4  beyond a parent and wholly-owned subsidiary, including (1) "a company and its

5  officers, employees and wholly owned subsidiaries," (2) "subsidiaries controlled

6  by a common parent," (3) "firms owned by the same person," (4) "a firm owned by

7  a subset of the owners of another," (5) principal-agent relationships," and (6)

8  "partnerships or other joint arrangements in which persons who would otherwise

9  be competitors pool their capital and share the risks of loss as well as the

10  opportunities for profit."    *Freeman*, 322 F.3d at 1147-48 (internal citations

11  omitted).  The only court to consider the application of the AKA to a non-wholly-

12  owned subsidiary ruled that a 50/50 joint venture and one of the two non-majority

13  parent corporations were a single "person" under the AKA.  *Morse Diesel Int'l*, 66

14  Fed. Cl. at 799.

15    The government has plainly pled that MSA, LMSI, and LMC were acting as

16  _____

17  promotion, or continued employment" do not constitute an independent personal

18  stake, and the intra-corporate conspiracy doctrine applies even when an employee

19  may have acted outside the scope of his or her employment to pursue financial

20  bonuses or a promotion.  *See U-Haul Co. of Nev. v. United States*, No. 2:08-CV-

21  729-KJD-RJJ, 2012 U.S. Dist. LEXIS 103261, at *6 (D. Nev. July 25, 2012)

22  (adopting the government's argument to dismiss an alleged conspiracy between the

23  government and its employees).

MOTION TO DISMISS - 18

**LANE POWELL** PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WA  98111-9402
206.223.7000  FAX: 206.223.7107

a "single economic entity." *Freeman*, 322 F.3d at 1147 (explaining that "[t]he theme … is economic unity" as indicated by "substantial common ownership" or "an agreement to divide profits and losses").  The Complaint repeatedly alleges that the three entities shared substantial common ownership, that they were "affiliates," and that LMC controlled or had the ability to control MSA and LMSI. *See* Compl. ¶¶ 9, 42, 117, 124 (describing MSA and LMC as affiliates); *see also* 48 C.F.R. § 2.1 (under the FAR, an "affiliate" is any "associated business concerns or individuals if, directly or indirectly (1) [e]ither one controls or can control the other; or (2) [a] third party controls or can control both").  The government also alleges that MSA, LMSI, and LMC had "an agreement to divide profits and losses," and that LMC's ability to earn profit through both MSA's prime contract and LMSI's subcontract led to the alleged FCA violations.  *See* Compl. ¶ 37 (alleging the applicability of Clause B.11 prohibiting "the contractor from charging to DOE any additional profit through any subcontracts to any affiliate companies of the contractor except under narrow excepted circumstances"); ¶ 49 (alleging "DOE's Contracting Officer" stated "he would not permit any additional profit to LMSI or LMC on any such subcontract, because LMC was already earning profit on this work through its part ownership of MSA"); ¶ 88 (alleging "LMC, MSA, LMSI, Olsen, and Armijo" understood it was "necessary to have DOE consent to the subcontract as proposed before any of [LMSI's] profit could be realized by LMC").  Accordingly, the AKA claim cannot stand.  *See Freeman*, 322 F.3d at 1147 (holding that members of a "single economic entity" "are incapable of conspiring with one another").

MOTION TO DISMISS - 19

### 3.    The rule of lenity requires narrow construction of the AKA.

Even if the government's AKA claim could survive the *Skilling* and affiliate hurdles, the rule of lenity would preclude liability.  The AKA is both a civil and criminal statute.  "The rule of lenity ensures that criminal statutes will provide fair warning concerning conduct rendered illegal and strikes the appropriate balance between the legislature, the prosecutor, and the court in defining criminal liability." *Liparota v. United States*, 471 U.S. 419, 427 (1985).  Civil AKA claims are subject to the rule of lenity "[b]ecause [a court] must interpret the statute consistently, whether [a court] encounter[s] its application in a criminal or noncriminal context[.]" *Leocal v. Ashcroft*, 543 U.S. 1, 11 n.8 (2004); *see also United States ex rel. Vavra v. Kellogg Brown & Root, Inc.*, 727 F.3d 343, 348 (5th Cir. 2013) (applying the rule of lenity to civil AKA claims).  The rule of lenity applies if, after considering the AKA's "text, structure, history, and purpose, there remains a grievous ambiguity or uncertainty in the statute such that the Court must simply guess as to what Congress intended." *Barber v. Thomas*, 560 U.S. 474, 488 (2010), *abrogated on other grounds by* Section 102(b)(1) of the First Step Act of 2018, Public Law No. 115-391 (internal quotations and citations omitted).  "[W]hen there are two rational readings of a criminal statute, one harsher than the other, [courts] are to choose the harsher only when Congress has spoken in clear and definite language." *McNally*, 483 U.S. at 359-60 (collecting cases applying the rule of lenity to narrow criminal statutes); *see also McDonnell v. United States*, 136 S. Ct. 2355, 2372-73 (2016) ("[W]e cannot construe a criminal statute on the assumption that the government will 'use it responsibly.'" (quoting *United States v.*

MOTION TO DISMISS - 20

LANE POWELL PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WA  98111-9402
206.223.7000 FAX: 206.223.7107

1      *Stevens*, 559 U.S. 460, 480 (2010)).

2          The rule of lenity forecloses the government's broad construction of the

3  AKA because multiple courts have found the statute—and, in particular, the

4  relevant language in the definition of "kickback"—to be ambiguous.  In *Vavra*, the

5  Fifth Circuit pointed to Congress's failure to define the two critical terms in the

6  statutory definition—"improperly" and "favorable treatment."   848 F.3d at 378.

7  The court rejected the government's interpretation that "improperly" means

8  "anything not 'innocent' or 'incidental'" because that construction would not

9  provide "reasonable notice to those in the government-contracting arena as to when

10  their acts are innocent and when they are not."  *Id.*

11          The Northern District of California has likewise applied the rule of lenity to

12  limit "improper[]" conduct under the AKA.  *Burger*, 2000 U.S. Dist. LEXIS

13  22066, at *15 (rejecting as "circular reasoning" "the government's argument that

14  [the] defendant's actions were improper because they constituted a kickback").  In

15  *Burger*, the defendant operated a property management company that agreed to

16  split the management fees it earned from the Department of Housing and Urban

17  Development ("HUD") with property owners in exchange for the right to serve as

18  the managing agent.  *Id.* at *2-4.  Even though this exchange had many hallmarks

19  of a kickback scheme—including two unaffiliated parties exchanging value—and

20  the Office of Inspector General for HUD had publicly opined that the practice in

21  question was "essentially a kickback scheme," the court applied the rule of lenity

22  because HUD had not taken steps to issue a directive specifically prohibiting the

23  fee-splitting, and the "defendant would have been unable to determine that the

MOTION TO DISMISS - 21

1    conduct at issue was 'improper' under the [AKA]." *Id.* at *17-20.

2    The potential harm resulting from the government's broad construction of

3    the AKA here is far greater than in *Vavra* and *Burger*, where the alleged conduct

4    was much more consistent with a typical kickback.  *See Vavra*, 727 F.3d at 345

5    (explaining that the defendant's subcontract manager had accepted benefits from

6    an unaffiliated subcontractor on at least "ninety-three occasions" and citing

7    benefits ranging from "meals, drinks, golf outings, tickets to rodeo events, baseball

8    games, football games, and other gifts and entertainment"); *Burger*, 2000 U.S.

9    Dist. LEXIS 22066, at *5 (noting undisclosed fee-splitting between unaffiliated

10   entities).   In this case, the government is pursuing a novel theory involving

11   employee incentive compensation—an arrangement that the Supreme Court has

12   expressly held is *not* a kickback or a bribe.  *Skilling*, 561 U.S. at 413.

13   The breadth and future implications of the government's theory also counsel

14   in favor of lenity.   The government could apply its AKA theory not just to

15   compensation to seconded employees, but to *any* compensation a company paid to

16   *any* employees who engaged in conduct that the government deemed improper and

17   resulted in "favorable treatment" for the company in connection with a government

18   prime contract or subcontract.   When faced with a similar situation involving a

19   potentially broad statute—the Computer Fraud and Abuse Act, 18 U.S.C. § 1030—

20   the Ninth Circuit invoked the rule of lenity to adopt a narrow construction and

21   avoid making potential "criminals of large groups of people who would have little

22   reason to suspect they are committing a federal crime."   *United States v. Nosal*,

23   676 F.3d 854, 857-59 (9th Cir. 2012).  The same approach is necessary here.

MOTION TO DISMISS - 22

1    **4.      The government's AKA claims fail under Rules 8 and 9(b).**

2          Even if it were legally possible for LMC to pay its own employees a

3    kickback, the government has not alleged particular facts to support a plausible

4    AKA claim.   The government's allegations highlight that there was nothing

5    improper about the MICP payments and that there was no link between the

6    payments and the alleged favorable treatment.   The Complaint also fails to satisfy

7    Rule 9(b) because it does not plead the AKA claim with the requisite particularity.

8          **a.      The government's AKA claim is implausible.**

9          The government fails to establish a reasonable inference that LMC's MICP

10    payments were improper or that the payments were linked to any favorable

11    treatment.   *See Vavra*, 848 F.3d at 378 (The AKA "requires a link between the

12    kickback and some benefit being sought or already received."); *see also* 132 Cong.

13    Rec. S16307-01 (Statement of Sen. Levin) (The AKA requires proof of intent "to

14    improperly influence a procurement decision.").   The Complaint does not hint at

15    who from LMC might have proposed or agreed to the kickback scheme.   It is silent

16    as to who at LMC determined the MICP award and how the amount was

17    calculated.   The Complaint merely offers the conclusory assertion that the MICP

18    payments "were kickbacks because they were payments by LMC and LMSI to

19    employees of MSA, a prime contractor, in return for improperly providing LMC

20    and LMSI with favorable treatment relative to the MSA-LMSI subcontract and

21    MSA's contract with DOE."   Compl. ¶ 123.   Simply calling a transaction a

22    kickback does not make it one.   *See Burger*, 2000 U.S. Dist. LEXIS 22066, at *13-

23    14; *see also Iqbal*, 556 U.S. at 678 ("A pleading that offers labels and conclusions

MOTION TO DISMISS - 23

**LANE POWELL PC**
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WA 98111-9402
206.223.7000 FAX: 206.223.7107

or a formulaic recitation of the elements of a cause of action will not do." (internal quotation omitted)).  Here, the facts the government alleges and the absence of allegations about how LMC awarded MICP compensation doom its AKA claim.

First, the government's allegation that Defendants worked together to maximize LMC profits *years before* the MICP payments in question negates any reasonable inference of a kickback.  In the only other case to consider an alleged intra-corporate kickback, the court dismissed the government's AKA claim because the factual allegations contradicted the government's theory that the favorable treatment at issue—also profit on an affiliate subcontract—resulted from the alleged kickback.  *See Patzer*, 2018 U.S. Dist. LEXIS 121604, at *22-23.  In *Patzer*, the government alleged that a subcontractor provided a kickback to an affiliated prime contractor by agreeing to accept responsibility for certain employee compensation in exchange for a favorable deal on the subcontract.  *Id.* at *7-10.  The court dismissed the AKA claim under Rule 8 because the government alleged that, as part of a business strategy to increase profits, the common corporate parent decided to use an affiliated subcontractor *before the alleged kickback occurred.  Id.* at *22-23 (explaining that "it is simply implausible to think that [the prime contractor] could have used anyone other than [the affiliated] subcontractor" because doing so would have eliminated the opportunity for the corporate family to earn profits at both the prime and subcontract levels).

The government's allegations here have the same fatal flaw—the government alleges that LMC intended to seek profit on the LMSI subcontract well before the MICP payments at issue began in 2009.  *See, e.g.*, Compl. ¶¶ 41–42, 44

MOTION TO DISMISS - 24

LANE POWELL pc
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WA  98111-9402
206.223.7000  FAX: 206.223.7107

1  (alleging LMC was pursuing a strategy to profit on an affiliate subcontract in May

2  2007); ¶ 123 (alleging kickbacks began in 2009).  The only reasonable inference is

3  that any effort to obtain profit on the subcontract resulted from the alleged pre-

4  determined corporate strategy and not from subsequent MICP payments.  *Accord*

5  *Iqbal*, 556 U.S. at 682 (Rule 8 requires sufficient facts to overcome any "obvious

6  alternative explanation.").  The government also does not help its cause by alleging

7  that LMC employees began taking actions on MSA's behalf to benefit LMC in

8  2008, before the MICP payments began, *id.* ¶ 47, and that MSA employees who

9  did not receive MICP payments also took actions benefitting LMC.  *Id.* ¶¶ 71–72,

10  77, 102–03.  The government has "plead[ed] [itself] out of court by alleging facts

11  that defeat recovery."  *Doe*, 429 F.3d at 708.

12      Second, the government's AKA claim also fails because it does not allege

13  facts supporting a reasonable inference that LMC's MICP payments were

14  improper.  *Accord Vavra*, 848 F.3d at 379 (ordinary meaning of "improper" is "not

15  in accord with … right procedure" (quoting Merriam-Webster's Collegiate

16  Dictionary 626 (11th ed. 2003)); *Burger*, 2000 U.S. Dist. LEXIS 22066, at *15

17  (citing the legislative history's explanation that Congress included "'improperly'

18  … to ensure that exchange[s] made … for other permissible purposes, such as

19  innocent or incidental favors, are not included under the definition of 'kickback'"

20  and that the legislative history "explicitly leaves open the possibility of other

21  permissible purposes").  Nothing in the Complaint plausibly contends that LMC

22  deviated from its publicly available MICP Plan, which is an objective, standardized

23  method of compensating executives across LMC's various businesses.  *See* LMC's

MOTION TO DISMISS - 25

**LANE POWELL PC**
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WA  98111-9402
206.223.7000 FAX: 206.223.7107

1    Motion Requesting Judicial Notice, ECF No. 36, at 5-6; *United States ex rel. Bly-*

2    *Magee v. Premo*, 333 F. App'x 169, 170 (9th Cir. 2009) (holding that a company

3    does not violate the AKA merely by providing incentives consistent with an

4    established "regulatory regime").  Accordingly, the AKA claim must be dismissed

5    because the government has not alleged any facts to overcome the "obvious

6    alternative explanation" for the MICP payments.  *Iqbal*, 556 U.S. at 682.

7             **b.    The AKA allegations do not satisfy Rule 9(b).**

8             The government does not adequately describe the "particular misconduct" to

9    enable Defendants to respond and the Court and the parties to fashion manageable

10    limits on discovery.  *See United Healthcare Ins. Co.*, 848 F.3d at 1179-80; *Uchytil*

11    *v. Avande, Inc.*, No. C12-2091-JCC, 2018 U.S. Dist. LEXIS 31737, at *5 (W.D.

12    Wash. Feb. 27, 2018) (explaining enforcement of Rule 9(b) is necessary to ensure

13    claims have "discernable boundaries and manageable discovery limits" (internal

14    quotation omitted)).  Specifically, the Complaint is devoid of the necessary "who,

15    what, when, where, and how of the misconduct charged" and the required

16    explanation of why that conduct is a kickback.  *See United Healthcare Ins. Co.*,

17    848 F.3d at 1180 (internal citations omitted).

18             The Complaint does not identify which MICP payments are at issue.  Some

19    allegations suggest that all MICP compensation to all MSA-seconded LMC

20    employees between 2009 and 2015 constituted kickbacks, *e.g.*, Compl. ¶ 118

21    (alleging payments to "high-ranking MSA employees"), while other allegations

22    suggest the AKA claim is limited to MICP payments to Olsen, Armijo, Eckman,

23    and Ruscitto, *id.* ¶ 123.  Rule 9(b) requires that the Complaint provide sufficient

MOTION TO DISMISS - 26

1    information for Defendants and the Court to determine the relevant employees and

2    years.  *See United States ex rel. Dooley v. Metic Transplantation Lab. Inc.*, No. CV

3    13-07039 SJO, 2016 U.S. Dist. LEXIS 192400, at *10 (C.D. Cal. June 6, 2016)

4    (holding that Rule 9(b) requires factual allegations regarding the "material aspects"

5    of a kickback scheme, including "the duration of such an arrangement" and "the

6    individuals … who participated").

7         To the extent the government provides any detail at all on why it believes

8    that MICP payments amounted to kickbacks, it is limited to Armijo's and Olsen's

9    2011 awards.  Compl. ¶¶ 120, 122.  The Complaint offers nothing on why

10   payments before or after DOE's conditional consent could be a kickback and says

11   nothing about how the government believes Eckman, Ruscitto, or other unnamed

12   seconded employees "improperly provid[ed] LMC and LMSI with favorable

13   treatment."  *Id.* ¶ 123.  The government cannot allege that MICP payments to

14   Armijo and Olsen before or after 2011 are kickbacks without explaining *how* those

15   payments violate the AKA.  *See United States ex rel. Colquitt v. Abbott Labs.*, 858

16   F.3d 365, 372 (5th Cir. 2017) (affirming dismissal of a complaint alleging a

17   violation of the Anti-Kickback Statute ("AKS"), 42 U.S.C. § 1320a-7b, which

18   prohibits payments "in return for" or "to induce" healthcare referrals, because it

19   "never links the alleged carrots to" the specific favorable treatment).  Likewise, the

20   government may not claim that other secondees took steps to favor LMC or LMSI

21   without saying *who* took those steps, *what* they did, and *how* those actions were

22   linked to MICP payments.  *See id.*; *United States ex rel. Nunnally v. W. Calcasieu*

23   *Cameron Hosp.*, 519 F. App'x 890, 894 (5th Cir. 2013) (affirming dismissal of an

MOTION TO DISMISS - 27

**LANE POWELL PC**
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WA 98111-9402
206.223.7000 FAX: 206.223.7107

1  AKS complaint because it "does not specify who in particular was involved" or
2  explain "how [the conduct at issue] constituted an illegal kickback").    The
3  government has failed to provide adequate detail for *any* of the alleged kickbacks,
4  but it has provided *no detail at all* for alleged kickbacks aside from Armijo's and
5  Olsen's 2011 MICP awards.    The government's entire AKA claim should be
6  dismissed, but failing that, the Court should, at a minimum, limit the AKA claim to
7  MICP payments to Armijo and Olsen in 2011.

8       **C.    The Government Fails to Plead FCA Theories with Particularity.**

9       LMC and LMSI join and adopt MSA's motion to dismiss all FCA claims.
10  As explained here, two of the government's FCA theories fail for the additional
11  reason that the Complaint lacks necessary details supporting the government's
12  allegations that some (unspecified) LMSI services and materials were not
13  commercial and that LMSI inflated the cost of some (unspecified) tasks.    For FCA
14  claims, Rule 9(b) requires the plaintiff to allege with particularity: "(1) a false
15  statement or fraudulent course of action (falsity element), (2) that is material
16  (materiality element), and (3) made with knowledge of that falsity (scienter
17  element), that causes (4) the government to pay out money."    *See United States ex*
18  *rel. Voss v. Monaco Enters.*, No. 2:12-CV-0046-LRS, 2016 U.S. Dist. LEXIS
19  86254, at *14-15 (E.D. Wash. July 1, 2016) (citing *United States ex rel. Lee v.*
20  *Corinthian Colls.*, 655 F.3d 984, 992 (9th Cir. 2011)).

21           **1.    The GSA Schedule allegations do not satisfy Rule 9(b).**

22       The government fails to provide any detail supporting its bare allegation that
23  Defendants misrepresented the commerciality of LMSI's services and materials.

MOTION TO DISMISS - 28

*See, e.g.*, Compl. ¶ 75 ("[C]ontrary to the representation that all proposed services and items were commercially available, many of the labor categories and all of the materials set forth in the LMSI proposal were not even contained in the LMSI GSA Schedule.").  The Complaint does not specify which or how many services were not on LMSI's GSA Schedule.  *Compare id.* ¶ 64 (questioning "*some* of the LMSI labor categories") *with* ¶ 75 (questioning "*many* of the labor categories") (emphasis added in both).  Without this critical information, it is impossible to determine which of the numerous labor categories covered by the subcontract are at issue, and, by extension, which of the various task orders included such services. *See Bly-Magee v. California*, 236 F.3d 1014, 1018-19 (9th Cir. 2001) (Rule 9(b) requires "particularized supporting detail … specific enough to give defendants notice of the particular misconduct which is alleged." (internal quotation omitted)).

Because of these pleading deficiencies, it is also unclear whether the government intends to argue that LMSI misrepresented that "some" unspecified services and materials were on LMSI's GSA Schedule when they were not, or whether it believes that these services and materials were not commercial at all. Either way, the Complaint lacks the factual predicate necessary to establish that the alleged misrepresentations were material to DOE's decision-making. *See Voss*, 2016 U.S. Dist. LEXIS 86254, at *17 ("[T]he U.S. Supreme Court has reinforced the necessity of pleading facts to support allegations of materiality under Rule 9(b).") (citing *Universal Health Servs. v. United States ex rel. Escobar*, 136 S. Ct. 1989 (2016)).  If the government's allegations relate to the GSA Schedule, then it needed to plead facts to establish how something so "minor or insubstantial" could

MOTION TO DISMISS - 29

**LANE POWELL PC**
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WA  98111-9402
206.223.7000 FAX: 206.223.7107

1   be material.  *Accord Universal Health Servs*, 136 S. Ct. at 2003 ("minor or

2   insubstantial" non-compliances are not material).  On the other hand, if the

3   government disputes the commerciality of the unspecified services and materials as

4   a general matter, it has failed to plead any underlying facts to support such a claim

5   because presence on a GSA Schedule is not required for goods and services to

6   qualify as commercial under the FAR.  *See* 48 C.F.R. § 2.1 (providing that items

7   "customarily used by the general public" and services "sold competitively in

8   substantial quantities in the commercial marketplace" are commercial).  And, as

9   the Complaint repeatedly acknowledges, Defendants were clear that LMSI's

10  services were commercial.  *See, e.g.*, Compl. ¶¶ 64, 111.

11          **2.      The government's allegations about the inflation of fixed**

12          **price and fixed unit rate tasks do not satisfy Rule 9(b).**

13          The Complaint contains a conclusory assertion that LMSI inflated some

14  fixed unit rates and fixed prices but provides scant detail about how these alleged

15  "schemes" worked.  The government complains that LMSI inflated the cost of

16  unspecified rates and prices by using "knowingly inflated FTE [Full-Time

17  Equivalent employee] estimates [] to build up the LMSI fixed unit rates proposed

18  to be charged to DOE."  Compl. ¶ 96.  The gist of this allegation appears to be that

19  LMSI's internal budgets estimated a lower number of FTEs than LMSI proposed.

20  *Id.* ¶¶ 96-98.  But the Complaint does not say what (if anything) any Defendant

21  represented to DOE about the budgets or how LMSI (or any other Defendant)

22  knew that the proposed FTE estimates were false.

23          The government's use of the word "estimates" underscores a fundamental

MOTION TO DISMISS - 30

**LANE POWELL PC**
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WA 98111-9402
206.223.7000 FAX: 206.223.7107

flaw in its allegations. "'Estimate' is a term that, by its very nature, connotes inexactness." *Mowat Constr. Co. v. Dorena Hydro, Ltd. Liab. Co.*, No. 6:14-cv-00094-AA, 2015 U.S. Dist. LEXIS 128058, at *19-20 (D. Or. Sep. 23, 2015); *see also Nev. Rest. Servs., Inc. v. Clark Cnty.*, 981 F. Supp. 2d 947, 957 (D. Nev. 2013) ("Merriam-Webster defines 'estimate' as 'a rough or approximate calculation.'"). The existence of two different "estimates," even if true, does not establish that either figure is unreasonable—only that LMSI came up with two approximations. *Accord United States v. Omnicare, Inc.*, 903 F.3d 78, 92 (3d Cir. 2018) ("[A]n inference of illegality based on facts that could plausibly have either a legal or illegal explanation would be insufficient to meet Rule 9(b)'s burden[.]"). Courts dismiss allegations of fraudulent estimates when complaints merely provide conclusory allegations of fraud paired with "little detail about how the fraud was carried out." *Compare United States ex rel. Berg v. Honeywell Int'l, Inc.*, No. 3:07-cv-00215, 2013 U.S. Dist. LEXIS 89197, at *18 (D. Alaska June 24, 2013), *aff'd in rel. part*, 580 F. App'x 559 (9th Cir. 2014) ("Setting forth which numbers and measurements were wrong and simply using adjectives like 'knowingly' or 'deliberately' to describe those numbers and measurements does not satisfy the heightened pleading standard of Rule 9(b).") *with* Compl. ¶ 96 (alleging LMSI's network services fixed unit rate was "grossly inflated" because LMSI "knowingly used false and inflated FTE estimates").

The government's allegations of double-billing for unspecified union labor, contained in a single paragraph of the Complaint, are even more skeletal. Compl. ¶ 99. The Complaint does not identify what representations (if any) Defendants

MOTION TO DISMISS - 31

1    made about the inclusion of union labor in the fixed prices/rates or how those

2    representations were material.  Although the government asserts that both LMSI

3    and MSA billed for union labor, it does not allege any facts indicating that LMSI

4    was aware of MSA's billing practices (or vice versa), which also compels

5    dismissal.  *Lee*, 655 F.3d at 996-97 (Rule 9(b) requires "sufficient facts to support

6    an inference or render plausible" that the defendant acted "knowingly" because the

7    FCA does not punish "innocent mistakes." (quotation omitted)).

8        Finally, the government's allegations that LMSI included costs outside its

9    scope of work are also defective.  This entire theory is limited to a single

10   paragraph, and the only information provided is that LMSI allegedly inflated prices

11   or rates by "improperly including costs for site services that were not even

12   included in the IR/CM statement of work that LMSI was designated to perform, as

13   well as for site services that were not even provided by LMSI but rather a separate

14   prime contractor."  Compl. ¶ 100.  The government does not say which fixed prices

15   or rates included these alleged costs, what costs were allegedly outside LMSI's

16   scope of work, or which services another contractor provided.  It also fails to

17   identify what representations (if any) LMSI made about these issues or how any

18   alleged misrepresentation is connected to a claim for payment.  *See Bly-Magee v.*

19   *Lungren*, 214 F. App'x 642, 644 (9th Cir. 2006) ("[S]weeping allegations that lack

20   detail" do not satisfy Rule 9(b).).

21   **IV.  CONCLUSION**

22       For the foregoing reasons, LMC and LMSI respectfully request dismissal of

23   the government's FCA claims (Counts I and II) and AKA claim (Count III).

MOTION TO DISMISS - 32

1    DATED this 23rd day of April, 2019.

2

                                        Respectfully submitted,
3

4                                       LANE POWELL PC

5                                       By      *s/Harold Malkin*
                                        Harold Malkin, WSBA No. 30986
6                                       1420 Fifth Avenue, Suite 4200
                                        P.O. Box 91302
7                                       Seattle, WA  98111-9402
                                        Email: malkinh@lanepowell.com
8                                       Telephone: 206.223.7000
                                        Facsimile: 206.223.7107
9

10                                      DINSMORE & SHOHL

11                                      By      *s/Michael J. Bronson*
                                        Michael J. Bronson, Admitted *Pro Hac*
12                                      *Vice*
                                        255 East Fifth Street, Suite 1900
13                                      Cincinnati, OH  45202
                                        Email: Michael.bronson@dinsmore.com
14                                      Telephone: 513.977.8654

15                                      Attorneys for Defendants Lockheed Martin
16                                      Services, Inc., and Lockheed Martin
                                        Corporation
17

18

19

20

21

22

23

MOTION TO DISMISS - 33

1

## CERTIFICATE OF SERVICE

2      I certify that on the date listed below, I electronically filed the foregoing

3  with the Clerk of the Court using the CM/ECF System, which in turn

4  automatically generated a Notice of Electronic Filing (NEF) to all parties in the

   case who are registered users of the CM/ECF system.   The NEF for the

5  foregoing specifically identifies recipients of electronic notice.

6

7      Executed this 23rd day of April, 2019, at Seattle, Washington.

8

      _s/Patti Lane_____

9      Patti Lane, Legal Assistant

10

11

12

13

14

15

16

17

18

19

20

21

22

23

**LANE POWELL** PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WA  98111-9402
206.223.7000  FAX: 206.223.7107