1   Marisa M. Bavand, WSBA No. 27929
    mbavand@groffmurphy.com
2   Allison L. Murphy, WSBA No. 43017
    amurphy@groffmurphy.com
3   GROFF MURPHY PLLC
    300 East Pine Street
4   Seattle, WA 98122
    Ph. (206) 628-9500
5   Fx. (206) 628-9506

6   Andrew S. Tulumello (Admitted Pro Hac Vice)
    ATulumello@gibsondunn.com
7   Alex Gesch (Admitted Pro Hac Vice)
    AGesch@gibsondunn.com
    GIBSON, DUNN & CRUTCHER LLP
8   1050 Connecticut Avenue, N.W.,
    Washington, DC 20036-5306
9   Ph. (202) 955-8500
    Fx. (202) 530-9678

10  Charles C. Speth (Admitted Pro Hac Vice)
    Charles.Speth@wilmerhale.com
11  Benjamin W. Chapin (Admitted Pro Hac Vice)
    Benjamin.Chapin@wilmerhale.com
12  WILMER CUTLER PICKERING HALE AND DORR LLP
    1875 Pennsylvania Avenue NW
13  Washington, DC 20006
    Ph. (202) 663-6000

14              UNITED STATES DISTRICT COURT
                EASTERN DISTRICT OF WASHINGTON

15

16  UNITED STATES OF AMERICA,        | Hon. Rosanna Malouf Peterson

                    Plaintiff,        | No. 4:19-cv-05021-RMP
17
            v.                        | MISSION SUPPORT ALLIANCE,
18                                     | LLC'S MOTION TO DISMISS THE
    MISSION SUPPORT ALLIANCE, LLC,   | COMPLAINT
19  LOCKHEED MARTIN SERVICES, INC.,  |
    LOCKHEED MARTIN CORPORATION,      | Hearing Date: October 3, 2019
20  and JORGE FRANCISCO "FRANK"      | Hearing Time: 10:00 a.m.
    ARMIJO,                           | WITH ORAL ARGUMENT
21                  Defendants.       |

22

    Mission Support Alliance, LLC's Motion to Dismiss the
    Complaint (No. 4:19-cv-05021) – Page i

**GROFF MURPHY PLLC**
300 East Pine
Seattle, Washington 98122
(206) 628-9500
Facsimile: (206) 628-9506

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22

**TABLE OF CONTENTS**

Page

INTRODUCTION ................................................... 1

BACKGROUND .................................................... 4

ARGUMENT ....................................................... 6

   I.    The Government's False Claims Act Claims Should Be Dismissed For Failure To Plead Scienter And Materiality (Counts I & II). ....................... 6

   II.   The Contract Disputes Act Divests This Court Of Jurisdiction Over The Government's Breach Of Contract Claim (Count IV). ..................... 17

CONCLUSION ...................................................... 24

Mission Support Alliance, LLC's Motion to Dismiss the Complaint  (No. 4:19-cv-05021) – Page ii

**GROFF MURPHY PLLC**
300 EAST PINE
SEATTLE, WASHINGTON 98122
(206) 628-9500
FACSIMILE: (206) 628-9506

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Appeal of – Range Tech. Corp.*,
  ASBCA No. 51943, 9302 B.C.A. (CCH) ¶ 32290 (June 23, 2003)..................20

*In Re Appeal of Medica, S.A.*,
  ENGBCA No. PCC-142, 00-2 B.C.A. (CCH) ¶ 30966 (Jan. 11,
  2000) ..........................................................................................................20

*Appeal of TDC Mgmt. Corp.*,
  DOTCAB, No. 1802, 90-1 BCA (CCH) ¶ 22627 (Oct. 25, 1989)...19, 20, 21, 22

*Appeals of Hardrives, Inc.*,
  IBCA No. 2511, 91-2 B.C.A. (CCH) ¶ 23769 (Feb. 6, 1991)...........................19

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)........................................................................................12

*United States ex rel. Berg v. Honeywell Int'l, Inc.*,
  740 F. App'x 535 (9th Cir. 2018) ...........................................................7, 8, 13

*United States ex rel. Costa v. Baker & Taylor, Inc.*,
  No. C-95-1825, 1998 WL 230979 (N.D. Cal. Mar. 20, 1998)..........................22

*Gonzalez v. Planned Parenthood of L.A.*,
  759 F.3d 1112 (9th Cir. 2014) ........................................................................7, 11

*United States ex rel. Hendow v. Univ. of Phx.*,
  461 F.3d 1166 (9th Cir. 2006) ........................................................................11

*United States ex rel. Hopper v. Anton*,
  91 F.3d 1261 (9th Cir. 1996) ....................................................................11, 12

*Joseph Morton Co. v. United States*,
  757 F.2d 1273 (Fed. Cir. 1985) ......................................................................22

*United States ex rel. Kelly v. Serco, Inc.*,
  846 F.3d 325 (9th Cir. 2017) ....................................................................7, 13, 15

Mission Support Alliance, LLC's Motion to Dismiss the
Complaint  (No. 4:19-cv-05021) – Page iii

*United States ex rel. Ling v. City of Los Angeles*,
    No. 11-cv-974, 2018 WL 3814498 (C.D. Cal. July 25, 2018) .................... 13, 14

*Appeal of M & M Servs., Inc.*,
    ASBCA No. 28712, 84-2 B.C.A. (CCH) ¶ 17405 (Apr. 19, 1984) ............. 20, 22

*United States ex rel. Perron v. Hughes Aircraft Co.*,
    No. 89-cv-3312, 1991 WL 352416 (C.D. Cal. Apr. 29, 1991) ......... 19

*United States ex rel. Rose v. Stephens Inst.*,
    909 F.3d 1012 (9th Cir. 2018) ................................................................. 13

*Safeco Ins. Co. of Am. v. Burr*,
    551 U.S. 47 (2007) ................................................................................. 11

*Texas Health Choice, L.C. v. Office of Pers. Mgmt.*,
    400 F.3d 895 (Fed. Cir. 2005) .............................................................. 17

*United States v. Hughes Aircraft Co.*,
    No. 89-cv-6842, 1991 WL 133569 (C.D. Cal. Apr. 5, 1991) ..................... 18, 19

*United States v. J & E Salvage Co.*,
    55 F.3d 985 (4th Cir. 1995) .................................................................. 18

*United States v. Marovic*,
    69 F. Supp. 2d 1190 (N.D. Cal. 1999) ...................................... 19, 21, 23

*United States v. Monaco Enterprises, Inc.*,
    No. 12-cv-0046, 2016 WL 3647872 (E.D. Wash. July 1, 2016) ...................... 13

*United States v. Renda Marine, Inc.*,
    667 F.3d 651 (5th Cir. 2012) ................................................................ 21

*United States v. Sci. Applications Int'l Corp.*,
    626 F.3d 1257 (D.C. Cir. 2010) .............................................................. 7

*United States v. United Techs. Corp.*,
    No. C-3-99-093, 2000 WL 988238 (S.D. Ohio Mar. 20, 2000) ....................... 22

*Universal Health Servs., Inc. v. United States ex rel. Escobar*,
    136 S. Ct. 1989 (2016) ................................................................... 7, 13

**GROFF MURPHY PLLC**
300 EAST PINE
SEATTLE, WASHINGTON 98122
(206) 628-9500
FACSIMILE: (206) 628-9506

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

**Statutes**

41 U.S.C. § 7101 ...................................................................... 17

41 U.S.C. § 7102 ............................................................... 17, 18

41 U.S.C. § 7103 .......................................................... 17, 18, 22

41 U.S.C. § 7104 ...................................................................... 17

41 U.S.C. § 7107 ...................................................................... 18

**Other Authorities**

S. Rep. No. 1118, 95th Cong. 2d Sess. ................................... 18

Vernon J. Edwards, *Firm-Fixed-Unit-Price vs. Time-And-Materials:*
   *A Good Alternative For Services Acquisition,*
   29 Nash & Cibinic Rep. NL ¶ 18 (Apr. 2015) ..................... 10

**Rules**

Fed. R. Civ. P. 8 ....................................................................... 3

Fed. R. Civ. P. 9 ....................................................................... 3

Fed. R. Civ. P. 12 ........................................................... 3, 6, 17

**Regulations**

48 C.F.R. § 2.101 ...................................................................... 8

48 C.F.R. § 15.403-1 .............................................................. 2, 8

48 C.F.R. § 16.103 .................................................................. 10

48 C.F.R. § 16.202-1 .......................................................... 10, 14

48 C.F.R. § 16.601 ............................................................. 10, 14

48 C.F.R. § 31.205-26 ........................................................ 2, 8, 9

**GROFF MURPHY PLLC**
300 EAST PINE
SEATTLE, WASHINGTON 98122
(206) 628-9500
FACSIMILE: (206) 628-9506

1

### INTRODUCTION

2       The government's Complaint is a textbook case of overreach:  a

3   retroactive attempt by the Department of Justice to impose False Claims Act

4   liability on a government contractor for actions performed with

5   contemporaneous agency knowledge and approval.  Mission Support Alliance,

6   LLC ("MSA") bid on, was awarded, and has performed the Mission Support

7   Contract ("MSC") at the United States Department of Energy ("DOE") Hanford

8   site for a decade.  Lockheed Martin Services, Inc. ("LMSI"), MSA's

9   information technology subcontractor from 2010-2016, had performed the same

10  scope of work (*before* MSA was awarded the MSC) going back to the 1990s.

11  Each pertinent aspect of MSA's subcontract with LMSI was disclosed to,

12  discussed with, and approved by DOE.  There is no allegation that any of the

13  services rendered by MSA or LMSI were in any way deficient, or that MSA

14  charged DOE anything other than prices listed in the subcontract that DOE

15  approved.  This case is a classic example of what is, at most, a contract dispute

16  transformed ten years later into allegations of fraud by hindsight.

17       At bottom, the government complains that DOE was misled into believing

18  that LMSI would not earn any profit under its subcontract with MSA, and that

19  the rates charged by LMSI to MSA were fraudulently inflated.  *See, e.g.*, Compl.

20  ¶¶ 2, 73, 103-10.  But the Complaint fails to plead scienter or materiality with

21  sufficiently plausible factual support to state a valid False Claims Act claim.

22  The absence of allegations essential to these two elements is striking.

Mission Support Alliance, LLC's Motion to Dismiss the
Complaint  (No. 4:19-cv-05021) – Page 1

**GROFF MURPHY PLLC**
300 EAST PINE
SEATTLE, WASHINGTON 98122
(206) 628-9500
FACSIMILE: (206) 628-9506

1    For example, the Complaint alleges repeatedly that LMSI was not allowed

2    to earn any profit on its subcontract because it was an affiliate of MSA, which

3    was part-owned by Lockheed Martin.  Compl. ¶¶ 37, 114.  But the Complaint

4    acknowledges that profit (or so-called affiliate fee) is allowed where the services

5    provided by the contractor are "commercial" in character.  *See id.* ¶ 37; *see also*

6    48 C.F.R. § 31.205-26(e), § 15.403-1(b).  To plead materiality and scienter, the

7    Complaint therefore must allege particularized facts showing that the services

8    provided by LMSI were not commercial, and that MSA knew they were not

9    commercial.  Without those allegations, the FCA theory fails.  Yet nowhere does

10   the Complaint allege which or how many services provided by LMSI to DOE

11   were not commercial; that DOE told MSA or LMSI that the services would not

12   be considered commercial (and thus ineligible for profit on that basis); or that

13   MSA or LMSI represented the services would not be commercial.  On the

14   contrary, the Complaint affirmatively alleges that MSA consistently insisted that

15   the services *were* commercial.  *See, e.g.*, Compl. ¶¶ 64, 75, 111.  That dooms the

16   government's theory.

17       Moreover, the Complaint alleges that LMSI should not have included any

18   profit potential in the rates for its subcontract with MSA.  *E.g.*, Compl. ¶¶ 62,

19   83-84, 86.  But nowhere does DOJ allege that the parties entered into, or should

20   have entered into, a cost-reimbursable contract—the type of contract vehicle

21   used when profit is *not* permitted under the affiliate fee regulation and services

22   must instead be sold "on the basis of cost incurred."  *See* 48 C.F.R.

Mission Support Alliance, LLC's Motion to Dismiss the
Complaint  (No. 4:19-cv-05021) – Page 2

**GROFF MURPHY PLLC**
300 East Pine
Seattle, Washington 98122
(206) 628-9500
Facsimile: (206) 628-9506

1 § 31.205-26(e).  On the contrary, the Complaint makes clear that DOE

2 knowingly approved a subcontract comprised of three contract types—time and

3 materials, fixed price, and fixed unit rate—that, by their very nature, are not

4 cost-reimbursable and allow a subcontractor to earn a profit (or sustain a loss).

5 It is simply not possible as a matter of law for the government to establish

6 scienter or materiality under the False Claims Act (or indeed to prove that a false

7 claim was submitted) on the basis that a contractor earned a profit on a contract

8 structured this way and knowingly approved by the agency.

9      In an ordinary case, the government's concerns about the appropriateness

10 of costs billed would be resolved as a contract dispute before a Civilian Board of

11 Contract Appeals ("CBCA")—an expert forum granted jurisdiction over

12 contract disputes.  Indeed, DOE's contracting officer triggered the contract

13 disputes process regarding this very contract and these same payments in 2015,

14 when he issued a notice of intent to disallow any costs resulting from profit

15 earned by LMSI; that matter has been pending before the CBCA since 2015 and

16 is now stayed.  But the government decided not to abide by the procedure that

17 Congress specified and the DOE contracting officer initiated.  Instead, the

18 Department of Justice embarked on a wide-ranging investigation culminating in

19 this False Claims Act suit that, effectively, dresses up a contract dispute over the

20 commerciality exception to the affiliate fee rule as a False Claims Act case.

21      That effort fails at the pleading stage, and dismissal is warranted under

22 Federal Rules of Civil Procedure 8, 9(b), 12(b)(1), and 12(b)(6).  The Complaint

**GROFF MURPHY PLLC**
300 EAST PINE
SEATTLE, WASHINGTON 98122
(206) 628-9500
FACSIMILE: (206) 628-9506

1 fails adequately to plead scienter and materiality essential to the False Claims

2 Act claims, and this Court lacks jurisdiction to hear the breach of contract claim

3 under the Contract Disputes Act.[1]

4 ## BACKGROUND

5     MSA is a joint venture that, during the time period relevant to the

6 Complaint, was owned by Lockheed Martin Integrated Technology, a wholly

7 owned subsidiary of LMC; Wackenhut Services, Inc.; and Jacobs Engineering

8 Group, Inc. Compl. ¶ 8. MSA was created for the purpose of bidding on and

9 performing DOE's mission support prime contract at the Hanford nuclear site.

10 *Id.* Under the Mission Support Contract, MSA provides support "essential to the

11 success of the Hanford Site cleanup mission from an operational, safety, and

12 security standpoint." *Id.* ¶ 35. Part of MSA's role is to supply "DOE and its

13 contractors with cost-effective infrastructure and site services integral and

14 necessary to accomplish the Hanford Site environmental cleanup mission,"

15 _____

16     [1] For purposes of judicial economy, MSA joins in the arguments advanced

17 by Lockheed Martin Corporation, Lockheed Martin Services, Inc., and Frank

18 Armijo about the Anti-Kickback Act, *see* LMC Mot., at Section III.B, Armijo

19 Mot., at Section I, which apply equally to MSA. MSA also joins the other

20 relevant portions of the defendants' briefs, which further explain why the

21 government's False Claims Act claims warrant dismissal.

22

Mission Support Alliance, LLC's Motion to Dismiss the
Complaint (No. 4:19-cv-05021) – Page 4

**GROFF MURPHY PLLC**
300 EAST PINE
SEATTLE, WASHINGTON 98122
(206) 628-9500
FACSIMILE: (206) 628-9556

1    including "Information Resources/Content Management." *Id.*  This work scope

2    involves a range of common information services and technology, including

3    Local Area Network (LAN), desktop and user services, telecommunications

4    systems, radios, and pager systems.  The goal of these services is to provide the

5    necessary technical support to allow the "thousands of workers involved in the

6    cleanup efforts" to focus on and successfully execute their environmental

7    cleanup mission.  *Id.* ¶ 34.

8         The Complaint's allegations focus on a subcontract MSA entered into

9    with LMSI, an LMC subsidiary, to perform the information resources/content

10    management ("IR/CM") scope of work required by the Mission Support

11    Contract.  Compl. ¶¶ 43, 45, 52.  LMSI for nearly a decade had performed the

12    "same services" under a prior subcontract in which Fluor, not MSA, was the

13    prime contractor, *id.* ¶ 113, and MSA identified LMSI as its proposed

14    continuing subcontractor for these services from the outset of the bidding

15    process, *id.* ¶ 43.  After a lengthy series of negotiations and discussions that the

16    Complaint selectively describes, DOE conditionally consented to the LMSI

17    subcontract on February 1, 2011, provided that LMSI further reduce its rates,

18    which it did.  *Id.* ¶¶ 114-16.

19         Nearly four years later, on May 18, 2015, DOE notified MSA that it

20    would seek to disallow certain payments made to LMSI under the subcontract.

21    This process culminated in a decision by a contracting officer issued on

22    November 10, 2015, finding that a portion of the revenue collected by LMSI

Mission Support Alliance, LLC's Motion to Dismiss the
Complaint  (No. 4:19-cv-05021) – Page 5

**GROFF MURPHY PLLC**
300 EAST PINE
SEATTLE, WASHINGTON 98122
(206) 628-9500
FACSIMILE: (206) 628-9506

1    was unallowable affiliate profit under the Mission Support Contract and various

2    provisions of the Federal Acquisition Regulation because the services were not

3    commercial.  MSA appealed the decision of the contracting officer to the

4    CBCA, CBCA No. 5095.  The appeal of that contract dispute was stayed during

5    the pendency of the DOJ's three-year investigation, and remains stayed

6    following the filing of this action to allow for the resolution of the False Claims

7    Act claims over which the CBCA has no subject matter jurisdiction.  *See* Ex. A

8    (order granting stay).

9    In the Complaint, the government asserts claims under the False Claims

10    Act, alleging that LMSI and MSA defrauded the Department of Energy by

11    enabling LMSI to earn a profit on the subcontract, and by charging inflated

12    rates.  Compl. ¶¶ 2, 73, 103-10, 132-41.  The government also contends that

13    MSA violated the AKA by soliciting and accepting kickbacks to MSA

14    personnel.  *See id.* ¶¶ 142-46.  Finally, in addition to other common law claims

15    not brought against MSA, the government alleges a breach of contract action

16    against MSA.  *Id.* ¶¶ 147-48.

17    **ARGUMENT**

18    **I.    The Government's False Claims Act Claims Should Be Dismissed For**
19    **Failure To Plead Scienter And Materiality (Counts I & II).**

20    The government's False Claims Act claims should be dismissed at the

21    outset under Federal Rules of Civil Procedure 8, 9(b), and 12(b)(6) because the

22    Complaint does not adequately plead facts to establish MSA's scienter or the

**GROFF MURPHY PLLC**
300 East Pine
Seattle, Washington 98122
(206) 628-9500
Facsimile: (206) 628-9506

1   materiality of any alleged misstatement to DOE's decisions to pay for the IT

2   services MSA provided through the subcontract.

3        The Supreme Court has called for "rigorous" application of the False

4   Claims Act's materiality and scienter requirements, both of which must be

5   "strictly enforced," including at the motion to dismiss stage. *Universal Health*

6   *Servs., Inc. v. United States ex rel. Escobar*, 136 S. Ct. 1989, 2002 (2016); *see*

7   *also United States v. Sci. Applications Int'l Corp.*, 626 F.3d 1257, 1270 (D.C.

8   Cir. 2010) (observing need for "strict enforcement of the Act's materiality and

9   scienter requirements"). A contractor does not act with scienter if that

10   contractor knows the government is aware of and has acquiesced in a particular

11   payment practice. *See Gonzalez v. Planned Parenthood of L.A.*, 759 F.3d 1112,

12   1116 (9th Cir. 2014).

13        "The materiality standard is demanding," and government payment of "a

14   particular claim in full despite its actual knowledge that certain requirements

15   were violated" is "very strong evidence that those requirements are not

16   material." *Escobar*, 136 S. Ct. at 2003. Similarly, regular government payment

17   of "a particular type of claim in full despite actual knowledge that certain

18   requirements were violated" is "strong evidence that the requirements are not

19   material." *Id.* at 2003-04; *see also United States ex rel. Kelly v. Serco, Inc.*, 846

20   F.3d 325, 333-36 (9th Cir. 2017) (materiality not met where government

21   continued to pay defendant's claims despite noncompliance). In *United States*

22   *ex rel. Berg v. Honeywell Int'l, Inc.*, 740 F. App'x 535, 537 (9th Cir. 2018), the

Mission Support Alliance, LLC's Motion to Dismiss the
Complaint (No. 4:19-cv-05021) – Page 7

**GROFF MURPHY PLLC**
300 EAST PINE
SEATTLE, WASHINGTON 98122
(206) 628-9500
FACSIMILE: (206) 628-9506

1   Ninth Circuit applied *Escobar* to foreclose FCA liability where the government

2   paid claims for years despite knowledge of relators' allegations and the results

3   of the government's audit that disclosed key features of the purported fraud.

4   *Honeywell* further held that "the government's knowledge also negates scienter"

5   based on the same evidence. *Id.* at 539.

6        These legal principles are controlling and require dismissal here.

7        **a.**   The first premise of the government's case is that LMSI and MSA

8   allegedly violated the False Claims Act by allowing LMSI to earn a profit on its

9   subcontract.  According to the government, this type of "affiliate fee" is

10   precluded both by the applicable contract and by the Federal Acquisition

11   Regulation ("FAR").  *E.g.*, Compl. ¶¶ 1-3, 37, 125.  But both the applicable

12   contract and the FAR recognize an exception to this rule where the contractor is

13   providing "commercial" services, which are defined as any type of item

14   "customarily used by the general public or by non-governmental entities for

15   purposes other than governmental purposes" and that have been "sold, leased, or

16   licensed to the general public" or "offered for sale, lease, or license to the

17   general public." 48 C.F.R. § 2.101; *see* Compl. ¶ 37; 48 C.F.R. §§ 31.205-26(e),

18   15.403-1(b).  That definition squarely applies to the IT services LMSI was

19   providing at the Hanford site, both for the Department of Energy and for many

20   private sector companies.  *See* Compl. ¶ 111.

21        The Complaint is conspicuously vague about the commercial services

22   exception to the affiliate fee rule.  It does not allege which or how many services

Mission Support Alliance, LLC's Motion to Dismiss the
Complaint  (No. 4:19-cv-05021) – Page 8

**GROFF MURPHY PLLC**
300 EAST PINE
SEATTLE, WASHINGTON 98122
(206) 628-9500
FACSIMILE: (206) 628-9506

1 it claims were not commercial.  *See, e.g.*, Compl. ¶¶ 64, 75.  It does not allege

2 that MSA or LMSI represented the services would not be commercial.  Indeed,

3 the Complaint acknowledges that MSA consistently adhered to the position that

4 the services provided by LMSI *were* commercial.  *See, e.g.*, *id.* ¶¶ 64, 75, 111.

5 The Complaint does not allege that DOE ever communicated to LMSI or MSA a

6 final determination that the services would not be considered commercial and

7 were ineligible for profit on that basis.  Nor is there any allegation that DOE

8 ever told MSA or LMSI that the subcontract must be a cost-reimbursable type

9 contract, which would be necessary if all profit were disallowed.  *See, e.g.*, *id.*

10 ¶ 114; *see also* 48 C.F.R. § 31.205-26(e) (absent the services being commercial

11 in nature, the subcontract "shall be [billed] on the basis of cost incurred").

12     To the contrary, the government acknowledges that the rates proposed and

13 charged through the LMSI subcontract that DOE approved used a "variety of

14 fixed unit rates, firm fixed price and time and materials services."  *See* Compl.

15 ¶ 53.  That is significant, because those contract mechanisms inherently provide

16 the potential for a contractor to make a profit (or sustain a loss), and the Federal

17 Acquisition Regulation governing agency procurement decisions expresses a

18 preference for these mechanisms because they frequently aid the government by

19 aligning the contractor's incentives appropriately.  For example, in selecting a

20 contract type, "[t]he objective is to negotiate a contract type and price (or

21 estimated cost and fee) that will result in reasonable contractor risk and provide

22 the contractor with the greatest incentive for efficient and economical

Mission Support Alliance, LLC's Motion to Dismiss the
Complaint  (No. 4:19-cv-05021) – Page 9

GROFF MURPHY PLLC
300 EAST PINE
SEATTLE, WASHINGTON 98122
(206) 628-9500
FACSIMILE: (206) 628-9506

1   performance." 48 C.F.R. § 16.103(a).  For this reason, the FAR states that

2   fixed-price contracts should be used where possible precisely because they

3   leverage "the basic profit motive of business enterprise" to "appropriately tie

4   profit to contractor performance." *Id.* § 16.103(b).  A firm-fixed-price contract,

5   for instance, "provides for a price that is not subject to any adjustment on the

6   basis of the contractor's cost experience in performing the contract," and thus

7   "places upon the contractor maximum risk and full responsibility *for all costs*

8   *and resulting profit or loss.*" *Id.* § 16.202-1 (emphasis added); *see id.*

9   § 16.601(b) (stating that "time-and-materials contract provides for acquiring

10   supplies or services on the basis of . . . labor hours at specified fixed hourly rates

11   that include wages, overhead, general and administrative expenses, and profit");

12   *see also* Vernon J. Edwards, *Firm-Fixed-Unit-Price vs. Time-And-Materials: A*

13   *Good Alternative For Services Acquisition*, 29 Nash & Cibinic Rep. NL ¶ 18

14   (Apr. 2015) (observing that, for fixed unit rates, "[t]he unit price covers all costs

15   and profit, not just labor, and the *contractor bears the risk associated with all*

16   *performance cost*" (emphasis added)).

17        Here, there is no question that the DOE knew of and approved a

18   subcontract that—through its "variety of fixed unit rates, firm fixed price and

19   time and materials services," Compl. ¶ 53—inherently permitted the

20   subcontractor the opportunity to earn profit.  And it reimbursed MSA for

21   invoices submitted by that subcontractor from 2010 through 2015.  *See id.* ¶ 124.

22

Mission Support Alliance, LLC's Motion to Dismiss the
Complaint  (No. 4:19-cv-05021) – Page 10

1    These pleading admissions are fatal to the scienter element.  Indeed,

2  where the government knows about the underlying purportedly fraudulent

3  conduct, no False Claims Act liability can attach.  *See Gonzalez*, 759 F.3d at

4  1116 ("Stated simply, even if bills sent by Planned Parenthood were false in

5  portraying its costs, one cannot plausibly conclude that there was knowing

6  falsity on the part of Planned Parenthood given the explicit statements

7  addressing this subject made by the State of California through CDHS and the

8  State's silence after being told what procedures Planned Parenthood was

9  following.").  Moreover, the standard for scienter is an objective one, and when

10  a defendant discloses reliance on and follows a reasonable interpretation of the

11  relevant contractual or statutory provisions—here, the commercial services

12  exception to affiliate fee rules—it does not act with the requisite intent under the

13  False Claims Act.  *See id.* at 1115 (no scienter where government "expressed

14  concern over Planned Parenthood's billing practices, but remained silent when

15  Planned Parenthood explicitly described its billing practices and rationale");

16  *United States ex rel. Hopper v. Anton*, 91 F.3d 1261, 1267 (9th Cir. 1996); *cf.*

17  *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 70 n.20 (2007) (defendant did not

18  act with recklessness for purposes of Fair Credit Reporting Act when following

19  a "reasonable interpretation" of statutory and regulatory guidance).  The Ninth

20  Circuit has squarely held that "'differences in interpretations' [over regulatory

21  and contractual requirements] are not sufficient for False Claims Act liability to

22  attach."  *United States ex rel. Hendow v. Univ. of Phx.*, 461 F.3d 1166, 1174

Mission Support Alliance, LLC's Motion to Dismiss the
Complaint  (No. 4:19-cv-05021) – Page 11

**GROFF MURPHY PLLC**
300 EAST PINE
SEATTLE, WASHINGTON 98122
(206) 628-9500
FACSIMILE: (206) 628-9506

1   (9th Cir. 2006) (quoting *Anton*, 91 F.3d at 1267).  That principle compels

2   dismissal of this case.[2]

3          The Complaint also fails to plead materiality.  *First*, a large number of the

4   Complaint's materiality allegations can be set aside as conclusory statements.

5   *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  This includes, for example,

6   allegations that the Defendants made false records and statements "material to

7   the Department of Energy," Compl. ¶ 1; that Defendants "misrepresented and

8   omitted critical and material information" that "caused DOE to pay Defendants

9   tens of millions of dollars of inflated claims and unallowable profit," *id.* ¶ 2; and

10  that "MSA's letter requesting consent . . . contained numerous knowingly false

11  statements that were material to DOE's evaluation of MSA and LMSI's request

12  for consent to the subcontract," *id.* ¶ 103.  These types of "conclusory

13  _____

14  [2]   The Complaint relies heavily on the phrase "no affiliate fee will be

15  allowed" in the conditional consent letter dated February 1, 2011, Compl. ¶ 114,

16  but that letter did not say that the services were not commercial or that the

17  subcontract must be changed to a cost-reimbursable type contract, and the

18  Complaint itself describes a negotiation process and not statements of legal

19  conclusions, *see id.* ¶ 116 ("rather than carry out DOE's wishes by removing the

20  proposed profit, . . . [Defendants] agreed to reduce LMSI's proposed labor rates

21  by 1 percent").

22

Mission Support Alliance, LLC's Motion to Dismiss the
Complaint (No. 4:19-cv-05021) – Page 12

**GROFF MURPHY PLLC**
300 East Pine
Seattle, Washington 98122
(206) 628-9500
Facsimile: (206) 628-9506

1    allegations are insufficient to allege materiality under the False Claims Act"

2    under the standard discussed in *Escobar* and Rule 9(b), which requires the

3    government to "plead [its] claims with plausibility and particularity." *Escobar*,

4    136 S. Ct. at 2004 n.6; *see also, e.g.*, *United States v. Monaco Enterprises, Inc.*,

5    No. 12-cv-0046, 2016 WL 3647872, at *4-5 (E.D. Wash. July 1, 2016) (similar).

6         *Second*, the government's knowledge at the time of facts that make up key

7    features of the alleged "fraud"—which is discernible on the face of the

8    Complaint—compels dismissal.  The government's payment of "a particular

9    claim in full despite its actual knowledge that certain requirements were

10   violated" is "very strong evidence that those requirements were not material."

11   *Serco*, 846 F.3d at 334 (quoting *Escobar*, 136 S. Ct. at 2003); *see also United*

12   *States ex rel. Rose v. Stephens Inst.*, 909 F.3d 1012, 1019 (9th Cir. 2018) (same);

13   *see also Honeywell*, 740 F. App'x at 538 ("Here, the Army began paying

14   Honeywell's claims in 2003, and continued up to at least 2008, despite being

15   aware of Relator's fraud allegations . . . .").

16        The recent decision in *United States ex rel. Ling v. City of Los Angeles* is

17   instructive on the high bar recognized by the Supreme Court in *Escobar* and the

18   Ninth Circuit cases applying it.  No. 11-cv-974, 2018 WL 3814498, at *22 (C.D.

19   Cal. July 25, 2018).  The government alleged in *Ling* that the defendants made

20   false representations to receive federal housing funds.  *Id.* at *1.  The district

21   court concluded that dismissal was warranted even though the "government's

22   complaint plausibly allege[d] that compliance with federal accessibility laws

Mission Support Alliance, LLC's Motion to Dismiss the
Complaint  (No. 4:19-cv-05021) – Page 13

**GROFF MURPHY PLLC**
300 EAST PINE
SEATTLE, WASHINGTON 98122
(206) 628-9500
FACSIMILE: (206) 628-9506

1  was a condition of payment, that it was denied the benefit of its bargain with

2  Defendants, and that the alleged noncompliance was substantial." *Id.* at *22.

3  Notwithstanding these conclusions "suggest[ing] materiality," the district court

4  concluded that the complaint fell "short of countering the 'very strong evidence'

5  of *immateriality* created by" the government's continued payment despite

6  knowledge of alleged wrongdoing. *Id.* (emphasis added).

7       This case is on all fours with these precedents. Here, MSA and LMSI

8  repeatedly insisted to DOE that the IT services provided by LMSI to the

9  government (and to many other private companies) were "commercial" services

10  under the FAR, *see, e.g.*, Compl. ¶¶ 64, 75, 111; DOE never clearly or formally

11  determined that the services were not commercial, nor communicated that

12  decision to MSA and LMSI; instead, DOE knowingly and readily approved a

13  subcontract that *anyone* familiar with the FAR would recognize carried the

14  potential for profit, *see, e.g.*, 48 C.F.R. § 16.202-1; *id.* § 16.601(b); 29 Nash &

15  Cibinic Rep. NL ¶ 18; and DOE paid all claims after the subcontract approval

16  for years, *see* Compl. ¶ 124. These facts cannot support the scienter and

17  materiality necessary to state a valid False Claims Act case.

18       **b.** The Complaint's "escalation theory" of False Claims Act liability fares

19  no better. In addition to its allegations about profit, the Complaint also alleges

20  that MSA violated the FCA by enabling LMSI to charge undisclosed and

21  unreasonably high rates. In particular, the government claims that MSA and

22  LMSI misled DOE by applying an "escalation factor" to LMSI's published U.S.

Mission Support Alliance, LLC's Motion to Dismiss the
Complaint (No. 4:19-cv-05021) – Page 14

**GROFF MURPHY PLLC**
300 East Pine
Seattle, Washington 98122
(206) 628-9500
Facsimile: (206) 628-9506

1    General Services Administration approved labor rates.  Compl. ¶ 73.  But even

2    the Complaint's incomplete and selective allegations confirm the relationship

3    between the rates in the published GSA 4863G schedule on the one hand, and

4    the rates that MSA charged to the government on the other, at the time the

5    subcontract was approved and at the time all of the MSA invoices were paid.

6    The Complaint tries to manufacture a deception when there was none.

7         According to the Complaint, the government had all of the information

8    that it now says reveals so-called improper "escalation" or "inflation."  It had the

9    GSA 4863G schedule, *e.g.*, Compl. ¶¶ 45, 66, 69, 73, which was not only

10   published but had been approved by the federal government.  It had the rates in

11   the LMSI subcontract, and it knew the charges actually submitted by MSA in

12   invoices.  *E.g.*, *id.* ¶¶ 89-92 (describing October 2010 Best and Final Offer

13   "LMSI prepared for MSA to submit to DOE" and contrasting particular labor

14   rates in "LMSI's then-current published GSA rate" schedule with LMSI's

15   "proposed" rates).  Most importantly, the Complaint concedes that a

16   straightforward comparison of the 4863G schedule to the rate schedule from

17   LMSI "made clear" that the proposed rates in the subcontract were higher.  *Id.*

18   ¶ 72.  For all of the excited rhetoric, these concessions in the Complaint are fatal

19   to the False Act Claims theory.  *E.g.*, *Serco*, 846 F.3d at 334 (holding that

20   materiality standard was not met where government accepted "reports despite

21   their non-compliance" with a regulatory provision and continued paying

22   defendant's vouchers).

Mission Support Alliance, LLC's Motion to Dismiss the
Complaint  (No. 4:19-cv-05021) – Page 15

**GROFF MURPHY PLLC**
300 EAST PINE
SEATTLE, WASHINGTON 98122
(206) 628-9500
FACSIMILE: (206) 628-9506

1    The Complaint's apparent fallback that MSA or LMSI fraudulently

2    misrepresented the *amount* of profit fails for all the same reasons.  *See, e.g.*,

3    Compl. ¶¶ 65, 68.  The government approved a commercial subcontract that

4    inherently carried profit potential, and all of the rates charged to the government

5    were fully disclosed.  Because the government never took the position that the

6    LMSI subcontract had to be cost-reimbursable, or requested more discounting to

7    the rates than LMSI provided, it cannot attack the amount of profit actually

8    earned by LMSI as the supposed product of fraud.

9    The government's continued payment despite knowledge of the key facts

10   of the alleged fraud—here, the standard rate escalation in LMSI's rates and

11   profit potential inherent in the contract types—forecloses a finding that MSA

12   intended to mislead or did materially mislead the DOE regarding potential profit

13   in the LMSI subcontract.[3]

14

15

16

17   _____

18

19   [3]   The same result follows for the Complaint's other undeveloped

20   allegations regarding potential False Claims Act liability, which are discussed in

21   greater detail in the other defendants' motions to dismiss.  *See, e.g.*, LMC Mot.,

22   at Section III.C.  MSA incorporates those arguments by reference.

Mission Support Alliance, LLC's Motion to Dismiss the
Complaint  (No. 4:19-cv-05021) – Page 16

## II.    The Contract Disputes Act Divests This Court Of Jurisdiction Over The Government's Breach Of Contract Claim (Count IV).

The government's final claim against MSA incorporates all prior allegations in the Complaint and summarily concludes that those allegations also make out a claim for breach of MSA's Mission Support Contract.  Compl. ¶¶ 147-48.  This claim must be dismissed because the Contract Disputes Act ("CDA"), 41 U.S.C. § 7101 *et seq.*, divests the federal district courts of jurisdiction over breach of contract claims in these circumstances.  *See* Fed. R. Civ. P. 12(b)(1).

"The CDA exclusively governs Government contracts and Government contract disputes."  *Texas Health Choice, L.C. v. Office of Pers. Mgmt.*, 400 F.3d 895, 898 (Fed. Cir. 2005).  The CDA's exclusive review scheme "applies to any express or implied contract . . . made by an executive agency for . . . the procurement of property . . . [or] the procurement of services."  41 U.S.C. § 7102(a)(1), (2).  Under the CDA, government claims against a contractor like MSA "relating to" a contract must be decided by a contracting officer.  *Id.* § 7103(a)(3).  The contracting officer's decision "is not subject to review by any forum, tribunal, or Federal Government agency," unless authorized by the CDA. *Id.* § 7103(g).  A contractor may appeal the contracting officer's decision to an agency board of contractor appeals (here, the CBCA) or, "in lieu of" appealing to an agency board, a contractor may bring an action in the United States Court of Federal Claims.  *Id.* § 7104(a), (b)(1).  CBCA decisions are appealable to the

Mission Support Alliance, LLC's Motion to Dismiss the
Complaint  (No. 4:19-cv-05021) – Page 17

**GROFF MURPHY PLLC**
300 EAST PINE
SEATTLE, WASHINGTON 98122
(206) 628-9500
FACSIMILE: (206) 628-9506

1   United States Court of Appeals for the Federal Circuit by either the contractor or

2   the Government.  *Id.* § 7107(a)(1)(A), (B).

3       The CDA's exclusive review scheme means that the breach of contract

4   claim is not properly adjudicated here because "federal district courts lack

5   jurisdiction over government claims against contractors which are subject to the

6   CDA."  *United States v. J & E Salvage Co.*, 55 F.3d 985, 987 (4th Cir. 1995);

7   *see also United States v. Hughes Aircraft Co.*, No. 89-cv-6842, 1991 WL

8   133569, at *1 (C.D. Cal. Apr. 5, 1991); S. Rep. No. 1118, 95th Cong. 2d Sess.,

9   *reprinted in* 1978 U.S. Code Cong. & Ad. News 5235, 5244 ("U.S. district court

10   jurisdiction is eliminated from Government contract claims.").  Because the

11   government claims that MSA "materially breached its Mission Support

12   Contract" with DOE, Compl. ¶ 148, the dispute plainly "relat[es] to" an express

13   contract between DOE, an executive agency, and MSA, a contractor, for

14   procurement of services, within the meaning of the CDA.  41 U.S.C.

15   § 7102(a)(2).  The CDA divests the district court of jurisdiction over the breach

16   of contract claim, which must be adjudicated according to the procedures

17   prescribed by the statute.

18       That analysis does not change merely because the Complaint also alleges

19   claims under the False Claims Act.  While FCA claims are not subject to the

20   CDA's procedures, the CDA prescribes the exclusive avenue for the resolution

21   of the breach of contract claim.  Section 7103 of the Contract Disputes Act

22   removes certain fraud claims from the CBCA's jurisdiction.  *See* 41 U.S.C.

Mission Support Alliance, LLC's Motion to Dismiss the
Complaint  (No. 4:19-cv-05021) – Page 18

**GROFF MURPHY PLLC**
300 EAST PINE
SEATTLE, WASHINGTON 98122
(206) 628-9500
FACSIMILE: (206) 628-9506

1   § 7103(c)(1) (the CDA "does not authorize an agency head to settle,

2   compromise, pay, or otherwise adjust any claim involving fraud").  This so-

3   called "fraud exception does not apply if a claim can be decided under the CDA

4   without a determination of fraud."  *United States v. Marovic*, 69 F. Supp. 2d

5   1190, 1194 (N.D. Cal. 1999); *see, e.g.*, *United States ex rel. Perron v. Hughes*

6   *Aircraft Co.*, No. 89-cv-3312, 1991 WL 352416, at *1 (C.D. Cal. Apr. 29, 1991)

7   (dismissing mistake and unjust enrichment claims by the government for lack of

8   jurisdiction, despite parallel FCA claims); *Hughes Aircraft Co.*, 1991 WL

9   133569, at *1 (same).

10      Multiple decisions of the Boards of Contract Appeals make clear that

11   CDA jurisdiction over contract claims is not "los[t]" where the government files

12   a follow-on FCA action so long as no determination of fraud is required to

13   resolve the breach of contract claim.  *See, e.g.*, *Appeals of Hardrives, Inc.*, IBCA

14   No. 2511, 91-2 B.C.A. (CCH) ¶ 23769 (Feb. 6, 1991) ("If Congress had

15   intended to make the major point that Boards would 'lose' jurisdiction over a

16   contractor's CDA appeals once the Government asserted its own fraud charges

17   in connection with the contractor's claims, it simply could have said so in the

18   statute."); *id.* (the "only . . . limitation on a Board's authority is that it cannot

19   make a final determination as to whether fraud exists.").

20      For example, in *Appeal of TDC Management Corp.*, DOTCAB No. 1802,

21   90-1 BCA (CCH) ¶ 22627 (Oct. 25, 1989), the government filed a civil FCA

22   action nearly three years after the contractor commenced Board litigation

Mission Support Alliance, LLC's Motion to Dismiss the
Complaint  (No. 4:19-cv-05021) – Page 19

**GROFF MURPHY PLLC**
300 East Pine
Seattle, Washington 98122
(206) 628-9500
Facsimile: (206) 628-9506

1  seeking payment under a contract.  The Department of Transportation Contract

2  Appeals Board observed that it is not "divested of jurisdiction whenever fraud is

3  raised," and drew a distinction between the "finding the facts which indicate that

4  a fraud has or may have been perpetrated, as a necessary part of evaluating

5  evidence . . . which the Board has jurisdiction to render," and "a formal

6  determination that as a matter of law a fraud was perpetrated." *Id.*  As a result,

7  the Board held that it retained jurisdiction over the breach of contract claim,

8  notwithstanding the parallel FCA action pending in district court.  *See also, e.g.*,

9  *In Re Appeal of Medica, S.A.,* ENGBCA No. PCC-142, 00-2 B.C.A. (CCH)

10  ¶ 30966 (Jan. 11, 2000) ("[w]hether fraud or other illicit acts were committed in

11  the course of the events underlying the Government's claims are separate

12  matters to be resolved elsewhere"); *Appeal of M & M Servs., Inc.*, ASBCA No.

13  28712, 84-2 B.C.A. (CCH) ¶ 17405 (Apr. 19, 1984) (observing that "[a] claim

14  will not be dismissed or suspended merely on the basis of an allegation by the

15  Government of fraudulent conduct by the contractor" because "the issue of the

16  rights of the parties under the contract and the determination of whether fraud

17  exists are two separate matters to be decided by different tribunals"); *see also*

18  *Appeal of – Range Tech. Corp.*, ASBCA No. 51943, 9302 B.C.A. (CCH)

19  ¶ 32290 (June 23, 2003) (same).

20       The two specialized contract appeals boards and their predecessors have

21  repeatedly confirmed that "[t]he legislative history makes clear that Congress

22  *particularly* intended the Boards to have jurisdiction over breach of contract

Mission Support Alliance, LLC's Motion to Dismiss the
Complaint  (No. 4:19-cv-05021) – Page 20

**GROFF MURPHY PLLC**
300 EAST PINE
SEATTLE, WASHINGTON 98122
(206) 628-9500
FACSIMILE: (206) 628-9506

1   claims." *TDC Management Corp.*, DOTCAB No. 1802, 90-1 BCA (CCH)

2   ¶ 22627 (emphasis added).  And here, a CBCA action is already pending

3   concerning whether MSA breached the terms of the Mission Support Contract

4   by charging unallowable affiliate fee.  *Mission Support Alliance, LLC v.*

5   *Department of Energy*, CBCA 5095.  The CBCA action has been stayed "to

6   avoid duplicative discovery and allow for the efficient resolution of both

7   proceedings."  Ex. B (parties' joint status report requesting extended stay); Ex.

8   A (order granting stay).  Notably, Judge Somers did not dismiss the CBCA

9   action once the government filed its False Claims Act Complaint.  Nor did the

10  Department of Justice ask it to.  The case instead has been stayed pending

11  resolution of the False Claims Act action over which the CBCA has no subject

12  matter jurisdiction.

13      This approach is consistent with the CDA's purpose and intent—to

14  "establish[] a comprehensive scheme of administrative and legal remedies in

15  specialized courts designed to facilitate administrative resolution of contract

16  claims."  *Marovic*, 69 F. Supp. 2d at 1194.  This purpose "will be frustrated if

17  the fraud exception is read so broadly as to encompass any claim by a contractor

18  that is related to fraud, regardless of how remotely connected the fraud is to the

19  claim."  *Id.*; *see also United States v. Renda Marine, Inc.*, 667 F.3d 651, 655

20  (5th Cir. 2012) (same).

21      While some district court decisions contain language reflecting a broader

22  view, *see Marovic*, 69 F. Supp. 2d at 1193, the Federal Circuit (which hears all

Mission Support Alliance, LLC's Motion to Dismiss the
Complaint  (No. 4:19-cv-05021) – Page 21

**GROFF MURPHY PLLC**
300 EAST PINE
SEATTLE, WASHINGTON 98122
(206) 628-9500
FACSIMILE: (206) 628-9506

1    appeals from the Boards) has unambiguously held that claims "which are clearly

2    not inextricably linked with liability for fraud, must first be the 'subject of a

3    decision by the contracting officer,'" *Joseph Morton Co. v. United States*, 757

4    F.2d 1273, 1281 (Fed. Cir. 1985) (quoting 41 U.S.C. § 7103(a)).  The district

5    court decisions that take a broader view of the CDA's fraud exception turn on

6    the conclusion that the common law claims accompanying the government's

7    FCA claims are "merely *alternative pleadings* of a fraud claim," which is not the

8    case here.  *United States v. United Techs. Corp.*, No. C-3-99-093, 2000 WL

9    988238, at *2 (S.D. Ohio Mar. 20, 2000) (emphasis added); *see also United*

10   *States ex rel. Costa v. Baker & Taylor, Inc.*, No. C-95-1825, 1998 WL 230979,

11   at *14 (N.D. Cal. Mar. 20, 1998) (same).  They also inappropriately point to

12   concerns about judicial economy in a statutory setting where Congress expressly

13   determined that claims *should* be segregated into "different tribunals."  *See*

14   *Appeal of M & M Servs., Inc.*, ASBCA No. 28712, 84-2 B.C.A. (CCH) ¶ 17405;

15   *Appeal of TDC Mgmt. Corp.*, DOTCAB No. 1802, 90-1 BCA ¶ 22627 ("other

16   parts of the claim not associated with possible fraud or misrepresentation of fact

17   will continue on in the agency board or in the Court of Claims where the claim

18   originated" (quoting S. Rep. No. 1118, at 20)).  The CDA contemplates that

19   claims will be examined individually, and that the Boards retain jurisdiction

20   where possible.  *See Joseph Morton Co.*, 757 F.2d at 1281 (noting that

21   application of the CDA's exclusive grant of jurisdiction is determined claim by

22   claim, and that "Congress did not intend the word 'claim' [as used in 41 U.S.C.

Mission Support Alliance, LLC's Motion to Dismiss the
Complaint  (No. 4:19-cv-05021) – Page 22

**GROFF MURPHY PLLC**
300 EAST PINE
SEATTLE, WASHINGTON 98122
(206) 628-9500
FACSIMILE: (206) 628-9506

1  § 7103(c)(2)'s fraud exception] to mean the whole case between the contractor

2  and the Government; but, rather, that 'claim' mean each claim under the CDA

3  for money that is one part of a divisible case").

4   Under the foregoing principles, Count IV of the Complaint must be

5  dismissed.  The government's breach of contract claim does not require the

6  CBCA to assess whether MSA engaged in fraud—only whether MSA breached

7  the MSC by allowing LMSI to earn profit.  *See* Compl. ¶ 148.  That is why the

8  case is in the CBCA to begin with.  No act alleged to have breached the contract

9  requires a finding of scienter or any other mental state required to demonstrate a

10  prima facie case of fraud.  *See id.*  Because no fraud determination is necessary,

11  the breach of contract claim is not merely an alternative pleading of fraud; it is a

12  an entirely separate theory of recovery with separate elements of proof.  *See*

13  *Marovic*, 69 F. Supp. 2d at 1194.  Thus, the CDA requires the government to

14  adhere to the exclusive statutory procedures in resolving this claim.

15   The government has already accepted this to be true by rendering a

16  contracting officer's final decision concerning allegedly unallowable affiliate fee

17  pursuant to the CDA—the appeal from which is now pending before the CBCA.

18  The government cannot credibly invoke the CDA to pursue a claim centered on

19  allegedly unallowable affiliate fee under the contract while simultaneously

20  arguing that a breach of contract claim on the same issue is removed from the

21  CDA's exclusive jurisdiction.  *See* Ex. B ("The Department of Justice's claims

22  in [its FCA complaint] concern the same contract for information technology

Mission Support Alliance, LLC's Motion to Dismiss the
Complaint  (No. 4:19-cv-05021) – Page 23

**GROFF MURPHY PLLC**
300 EAST PINE
SEATTLE, WASHINGTON 98122
(206) 628-9500
FACSIMILE: (206) 628-9506

1  services at issue in this [CBCA] appeal."); Compl. ¶ 148 (alleging breach of

2  contract for "charging the Department of Energy for unreasonable and

3  unallowable subcontractor fee in violation of contractual and regulatory

4  provisions").  The government is merely attempting to obtain two bites at the

5  apple by pursuing essentially the same claims in two separate fora.  Congress by

6  statute has directed such claims be governed by the CDA.  The government's

7  breach of contract claim against MSA should follow the jurisdictional route

8  prescribed by Congress.

9  **CONCLUSION**

10  FCA cases always carry the specter of massive threatened exposure,

11  the guarantee of substantial discovery costs, and the diversion of enormous

12  amounts of time and attention.  At the motion to dismiss stage, the Court

13  serves a gatekeeping function to ensure that the case, as alleged, would state

14  a valid FCA cause of action, most especially on the elements of scienter and

15  materiality.  The Complaint makes clear that DOE knew the key elements on

16  rates and potential for profit when it approved the LMSI subcontract and

17  while it paid for performance under the subcontract for years.  The

18  Complaint should be dismissed.  At a minimum, the breach of contract claim

19  should be dismissed without prejudice under the CDA.

20

21

22

Mission Support Alliance, LLC's Motion to Dismiss the
Complaint  (No. 4:19-cv-05021) – Page 24

**GROFF MURPHY PLLC**
300 EAST PINE
SEATTLE, WASHINGTON 98122
(206) 628-9500
FACSIMILE: (206) 628-9506

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22

Dated this April 23, 2019.

Respectfully submitted,

GROFF MURPHY PLLC


 /s/  Marisa M. Bavand
Marisa M. Bavand, WSBA No. 27929
Allison L. Murphy, WSBA No. 43017
Groff Murphy PLLC
300 East Pine Street
Seattle, WA 98122
Tel: (206) 628-9500
Fax: (206) 628-9506
amurphy@groffmurphy.com
mbavand@groffmurphy.com

Andrew S. Tulumello (*pro hac vice*)
Alex Gesch (*pro hac vice*)
Gibson, Dunn & Crutcher LLP
1050 Connecticut Ave. N.W.
Washington, DC 20036
Tel: (202) 955-8657
Fax: (202) 530-9678
atulumello@gibsondunn.com
agesch@gibsondunn.com

Charles C. Speth (*pro hac vice*)
Benjamin W. Chapin (*pro hac vice*)
Wilmer Cutler Pickering Hale and Dorr
LLP
1875 Pennsylvania Avenue N.W.
Washington, DC 20006
Tel: (202) 663-6000
charles.speth@wilmerhale.com
benjamin.chapin@wilmerhale.com

*Attorneys for Defendant Mission Support Alliance, LLC*

Mission Support Alliance, LLC's Motion to Dismiss the
Complaint  (No. 4:19-cv-05021) – Page 25

1

## **CERTIFICATE OF SERVICE**

2        I hereby certify that I caused to be served on April 23, 2019, true and
correct copies of the foregoing document to the counsel of record listed

3    below, via the method indicated:

| | | |
|---|---|---|
| 4    Daniel Hugo Fruchter | ☐ | Hand Delivery Via |
|     Tyler Howard Louis Tornabene | | Messenger |
| 5    U.S. Attorney's Office - SPO | ☐ | First Class Mail |
|     920 W Riverside Suite 300 | ☐ | Federal Express |
| 6    PO Box 1494 | ☐ | Facsimile |
|     Spokane, WA 99210-1494 | ☑ | E-mail (via ECF) |

Tel.: 509-353-2767

7    Fax: 509-462-3866
E.: daniel.fruchter@usdoj.gov

8    E.: usawae.ttornabeneecf@usdoj.gov

9    ***Attorneys for Plaintiff United States of
America***

10

| | | |
|---|---|---|
| 11    Harold Malkin | ☐ | Hand Delivery Via |
|     Barbara J. Duffy | | Messenger |
|     Lane Powell PC - SEA | ☐ | First Class Mail |
| 12    1420 Fifth Avenue, Suite 4200 | ☐ | Federal Express |
|     PO Box 91302 | ☐ | Facsimile |
| 13    Seattle, WA 98111-9402 | ☑ | E-mail (via ECF) |

Tel.: 206-223-7277

14    Fax: 206-223-7107
E.: malkinh@lanepowell.com

15    E.: duffyb@lanepowell.com

16    Laurie A. Witek, *Admitted PHV*
Michael J. Bronson, *Admitted PHV*

17    Patrick M. Hagan, *Admitted PHV*
Dinsmore & Shohl LLP

18    255 East Fifth Street, Suite 1900
Cincinnati, OH 45202

19    Tel.: 513-977-8648
E.: Laurie.Witek@dinsmore.com

20    E.: Michael.Bronson@dinsmore.com
E.: Patrick.Hagan@dinsmore.com

21

22

**GROFF MURPHY PLLC**
300 EAST PINE
SEATTLE, WASHINGTON 98122
(206) 628-9500
FACSIMILE: (206) 628-9506

1  Michael J. Ferrara, *Admitted PHV*
   Dinsmore & Shohl LLP - Columbus
2  191 W. Nationwide Blvd, Suite 300
   Columbus, OH 43215
3  Tel.: 614-628-6975
   E.: Michael.Ferrara@dinsmore.com

4  Maryann P. Surrick, *Admitted PHV*
   Lockheed Martin Corporation
5  6801 Rockledge Drive, MP 203
   Bethesda, MD 20817
6  Tel.: 301-897-6988
   E.: maryann.surrick@lmco.com
7
   ***Attorneys for Defendants Lockheed***
8  ***Martin Services Inc. and Lockheed***
   ***Martin Corporation***
9
10  Geana M. Van Dessel                    ☐  Hand Delivery Via
    Kutak Rock, LLP                           Messenger
11  510 W Riverside Avenue, Suite 800      ☐  First Class Mail
    Spokane, WA 99201                      ☐  Federal Express
12  Tel.: 509-747-4040                     ☐  Facsimile
    Fax: 509-747-4545                      ☑  E-mail (via ECF)
13  E.: Geana.VanDessel@kutakrock.com

14  Eric Nitz, *Admitted PHV*
    Justin Shur, *Admitted PHV*
15  Lucas Walker, *Admitted PHV*
    MoloLamken LLP
16  600 New Hampshire Ave., NW
    Washington, DC 20037
17  T: (202) 556-2000
    E.: enitz@mololamken.com
18  E.: jshur@mololamken.com
    E.: lwalker@mololamken.com
19
    ***Attorney for Defendant Frank Armijo***
20

21

22

Mission Support Alliance, LLC's Motion to Dismiss the
Complaint (No. 4:19-cv-05021) – Page 27

**GROFF MURPHY PLLC**
300 EAST PINE
SEATTLE, WASHINGTON 98122
(206) 628-9500
FACSIMILE: (206) 628-9506

1    I declare under penalty of perjury under the laws of the United States and

2  the State of Washington that the foregoing is true and correct.

3    DATED: April 23, 2019 at Seattle, Washington.

4

5                                    GROFF MURPHY PLLC

6

7                                    *s/ Andrea Mas*
                                     Andrea L. Mas, Legal Assistant
8                                    300 East Pine Street
                                     Seattle, WA 98122
9                                    E. amas@groffmurphy.com

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

DECLARATION OF MARISA M. BAVAND IN SUPPORT OF
DEFENDANT, MISSION SUPPORT ALLIANCE, LLC'S MOTION
TO DISMISS  (Cause No. 4:19-cv-05021-RMP) – Page 5