

Allison L. Murphy
E-Mail: amurphy@groffmurphy.com

March 17, 2021

**VIA ECF**
The Honorable Rosanna M. Peterson
U.S. District Court, Eastern District of Washington
Thomas S. Foley United States Courthouse
920 West Riverside Ave, Room 840
Spokane, WA 99201

    Re:   *United States of America v. Mission Support Alliance LLC et al.*;
           No. 4:19-CV-5021-RMP (E.D. Wash.)

Dear Judge Peterson:

On behalf of Defendant Mission Support Alliance, LLC ("MSA"), I write to bring to the Court's attention a recent development in the administrative appeal, stayed since September 2016, pending before the U.S. Civilian Board of Contract Appeals ("CBCA"). *See Mission Support Alliance, LLC v. U.S. Department of Energy*, CBCA Nos. 5095, 6685 (Lester, J.) ("CBCA Action").

On January 19, 2021, MSA notified the Court that the government had moved for a "limited dissolution of the stay" in the CBCA Action for the CBCA to decide whether the services provided to MSA by Lockheed Martin Services, Inc. pursuant to a subcontract for information technology services were commercial items under the FAR. *See* ECF No. 100. MSA notified the Court that it opposed this request, and attached copies of the Parties' briefing before the CBCA. *Id.* MSA also committed to notify the Court immediately of any ruling by the Board.

On March 16, 2021, the CBCA issued an Order Denying Respondent's Motion to Lift the Stay of Proceedings for a Limited Purpose. The CBCA found that "[b]ecause the issue that DOE wants the Board to decide is clearly at issue in the litigation before the district court, and because the district court has not requested that the Board consider the issue to assist the district court in resolving

Thomas S. Foley United States Courthouse
Hon. Rosanna Malouf Peterson
March 17, 2021
Page 2

its case, we deny DOE's motion. The existing stay of proceedings in these appeals remains in place."

    Enclosed is a copy of the CBCA's Order.

    Very truly yours,

    GROFF MURPHY PLLC

    s/ *Allison L. Murphy*

    Allison L. Murphy

Enclosure(s)
- CBCA's March 16, 2021 Order

cc:    All Counsel of Record (via ECF)

**ATTACHMENT 1**



**UNITED STATES
CIVILIAN BOARD OF CONTRACT APPEALS**

ORDER DENYING RESPONDENT'S MOTION TO LIFT THE STAY
OF PROCEEDINGS FOR A LIMITED PURPOSE: March 16, 2021

CBCA 5095, 6685

MISSION SUPPORT ALLIANCE, LLC,

                          Appellant,

v.

DEPARTMENT OF ENERGY,

                          Respondent.

    Stephen W. Preston, Charles C. Speth, Andrew E. Shipley, Philip E. Beshara, and Benjamin W. Chapin of Wilmer Cutler Pickering Hale and Dorr LLP, Washington, DC; Andrew S. Tulumello and Alex C. Gesch of Gibson, Dunn & Crutcher LLP, Washington, DC; and Stanley J. Bensussen, General Counsel of Mission Support Alliance, LLC, Richland, WA, counsel for Appellant.

    Donald J. Williamson and Patrick M. Klein, Commercial Litigation Branch, Civil Division, Department of Justice, Washington, DC; Tyler H.L. Tornabene, Office of the United States Attorney, Eastern District of Washington, Department of Justice, Spokane, WA; and Paul R. Davis, Office of Chief Counsel, Richland Operations Office, Department of Energy, Richland, WA, counsel for Respondent.

**LESTER**, Board Judge.

ORDER

    Pending before the Board is a request from respondent, the Department of Energy (DOE), to lift the current stay of proceedings in these appeals for the limited purpose of

CBCA 5095, 6685 2

having the Board decide whether services that Lockheed Martin Services, Inc. (LMSI), provided as a subcontractor to appellant, Mission Support Alliance, LLC (MSA), under the contract at issue in these appeals, constituted a "commercial item," as MSA has alleged in count I of its complaint. At the request of the parties, these consolidated appeals have been stayed pending the outcome of related litigation arising under the False Claims Act (FCA), 31 U.S.C. §§ 3729–3733 (2018), that is currently pending before the United States District Court for the Eastern District of Washington. *See United States v. Mission Support Alliance, LLC*, No. 19-CV-05021 (E.D. Wash. docketed Feb. 8, 2019). Because the issue that DOE wants the Board to decide is clearly at issue in the litigation before the district court, and because the district court has not requested that the Board consider the issue to assist the district court in resolving its case, we deny DOE's motion. The existing stay of proceedings in these appeals remains in place.

## Background

These consolidated appeals stem from a contract that DOE awarded to MSA in April 2009 for information technology services in support of environmental cleanup activities at DOE's Hanford nuclear reactor site in Richland, Washington. CBCA 5095 involves MSA's appeal of a 2015 contracting officer's final decision disallowing $63,501,654.96 in LMSI subcontractor costs as unallowable profit earned under the contract from 2010 through 2014. Similarly, CBCA 6685 involves MSA's appeal of a 2019 contracting officer's final decision disallowing an additional $28,740,069.90 in LMSI subcontractor costs as unallowable profit earned under the contract in 2015 and 2016.

In November 2015, before MSA had filed its first appeal, the Office of the United States Attorney for the Eastern District of Washington opened an investigation into allegations that MSA had submitted false claims to DOE regarding LMSI's subcontracting fees under the contract at issue in these appeals. As part of its investigation, the United States Attorney's Office issued a civil investigative demand (CID) to MSA seeking, among other things, all "[c]ommunications concerning whether the goods and services procured by MSA . . . from LMSI were commercial items" under the contract. In September 2016, after MSA had filed its notice of appeal and a complaint in CBCA 5095, the parties asked the Board to stay proceedings pending the results of the FCA investigation because both the investigation and CBCA 5095 involved the same question of whether LMSI's services qualify as a commercial item. The Board granted that request by order dated September 23, 2016, while requiring the parties to file with the Board periodic reports on the status of the investigation.

On February 8, 2019, following completion of the FCA investigation, the Department of Justice (DOJ) filed a civil complaint against MSA, LMSI, and two other defendants in the

CBCA 5095, 6685 3

United States District Court for the Eastern District of Washington. In its complaint, the Government sought treble damages and penalties under the FCA from MSA and other defendants for allegedly billing DOE fraudulently for tens of millions of dollars in unallowable profit and/or fees; civil penalties under the Anti-Kickback Act (AKA), 41 U.S.C. §§ 8701–8707; and damages under the common law theories of unjust enrichment, breach of contract, and payment by mistake. In the count of the complaint seeking breach of contract damages, the Government alleged that MSA had breached the contract by, among other things, "charging inflated, unallowable, and unreasonable costs associated with LMSI's subcontract to MSA" and "charging [DOE] for unreasonable and unallowable subcontractor fee in violation of contractual and regulatory provisions."

In a joint motion filed on February 26, 2019, to continue the stay of proceedings in CBCA 5095, the parties agreed that the district court action concerns the same LMSI services at issue in CBCA 5095 and that both proceedings would require similar discovery. The parties represented that, to avoid duplicative discovery and to allow for the efficient resolution of both proceedings, CBCA 5095 should remain stayed until resolution of the district court action, but agreed that either party could move to dissolve to stay prior to that action's final resolution. The Board granted the parties' joint motion, and, in response to a subsequent joint request from the parties, continued that stay after, in early 2020, CBCA 6685 was filed and consolidated with CBCA 5095.

While CBCA 5095 and 6685 have been stayed virtually since their inception, proceedings in the district court have been active. MSA and the other defendants filed motions to dismiss the district court action, including the Government's breach of contract claim. In seeking dismissal of the breach of contract claim, MSA argued that the Contract Disputes Act (CDA), 41 U.S.C. §§ 7101–7109, "divests the federal district courts of jurisdiction over breach of contract claims in these circumstances" and that only the Board has jurisdiction to address those claims. In response to that motion, the Government argued that, "when a breach of contract . . . claim is intimately bound up with and part of the same case or controversy as an FCA claim, the government need not pursue the claims in two separate fora, but may instead pursue all claims in federal district court." Government Response Brief in *United States v. Mission Support Alliance, LLC*, No. 19-CV-05021 (June 24, 2019) at 76 (quoting *United States v. Unified Industries, Inc.*, 929 F. Supp. 944, 951 (E.D. Va. 1996)). It argued that, under the fraud exception to the CDA, the district court could decide all elements of its breach of contract claim, which, it asserted, "is inclusive of, but much more broad than, the pending matter before the CBCA." *Id.* at 80. Because MSA's alleged "fraud is inextricably intertwined with the breach of contract claim," both of which are based upon the same operative facts, *id.* at 80-81, the Government alleged, the district court should retain jurisdiction over and decide the Government's breach of contract claim.

CBCA 5095, 6685 4

By decision dated January 13, 2020, the district court granted MSA's motion in part and denied it in part. While dismissing the Government's AKA civil penalties claim, it declined to dismiss the Government's FCA claims or breach of contract claim. In addition, the district court also denied the portion of MSA's motion seeking to dismiss that addressed the overlapping issues of its own proceeding and the proceeding before the Board:

> Defendant MSA and the DOE already agreed in the CBCA proceedings that the evidence subject to discovery in the appeal concerning the contract overlaps with the discovery relating to the FCA claims before this Court. *See* ECF No. 43-2 at 2–3. Having already determined that the FCA claims survive the Motions to Dismiss, the Court finds that the exception to the exclusive jurisdiction of the CBCA or the Court of Federal Claims should apply, and the CDA does not strip this Court of jurisdiction over the breach of contract claim in this case. Accordingly, Defendants' Motion to Dismiss the breach of contract claim under Fed. R. Civ. P. 12(b)(1) is denied.

*United States v. Mission Support Alliance, LLC*, No. 19-CV-05021, slip op. at 31 (E.D. Wash. Jan. 13, 2020).

The district court then issued, on April 15, 2020, a detailed scheduling order covering the remainder of proceedings and discovery in the FCA matter. The order provides for the completion of document discovery by February 2021, fact discovery by April 2021, and expert discovery by December 2021. It appears from a review of a docket sheet available on Westlaw that a four-week trial that was originally scheduled to commence on November 28, 2022, has recently been rescheduled to commence May 30, 2023.

In December 2020, DOE filed its current motion for a limited lifting of the stay on one of the seven counts in MSA's complaint. As the basis for its motion, it asserts that, during the FCA investigation and early in the subsequent district court proceedings, MSA's position that the services offered by LMSI were "commercial items" was not a central focus of the parties, even though the United States was aware of MSA's position at that time. Instead, DOE argues, its central focus was on the alleged false statements and false claims that MSA made to DOE, without regard to the legitimacy of MSA's representations that certain items and services were "commercial." It only recently realized, it says, that MSA's reliance on the "commercial item" characterization will be a central focus of the cases before both the district court and the Board. "[G]iven the Board's unique expertise in matters of contract interpretation involving Federal Acquisition Regulation (FAR) concepts," DOE argues, "the Respondent believes that a limited dissolution of the stay at this time for the purpose of permitting a determination by the Board as to whether or not MSA had a subcontract with LMSI for 'commercial items' as defined by the FAR, and whether the materials and services

CBCA 5095, 6685 5

offered by LMSI constitute commercial items as defined in the FAR, would be beneficial and create judicial efficiency in both proceedings." Respondent's Motion (Dec. 18, 2020) at 3. The other six counts in MSA's complaint would not be affected by DOE's motion. MSA opposes DOE's motion and requests that the stay on all counts of the complaint remain in place until the resolution of the FCA proceeding at the district court. On February 23, 2021, after MSA filed its opposition to DOE's motion, responsibility for these appeals was reassigned to the undersigned as the presiding judge.

Discussion

The Standard for Evaluating a Stay Request

As the parties recognized in their earlier joint stay requests, "the power to stay proceedings is incidental to the power inherent in every [tribunal] to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. North American Co.*, 299 U.S. 248, 254 (1936). "How this can best be done calls for the exercise of judgment, which must weigh competing interests and maintain an even balance." *Id.* at 254-55.

Normally, "[t]he burden is on the party seeking [a] stay," or seeking to continue a stay, "to clearly demonstrate that it will suffer real hardship if the proceedings are not stayed." *Aerospatiale Helicopter Corp.*, DOT CAB 1905, 89-2 BCA ¶ 21,770. "This burden is a heavy one," and "the hardship must be more than mere inconvenience." *Id.* As the Supreme Court has explained, though, the rationale for imposing a heavy burden applies when "there is even a fair possibility that the stay for which [a party] prays will work damage to someone else. Only in rare circumstances will a litigant in one cause be compelled to stand aside while a litigant in another settles the rule of law that will define the rights of both." *Landis*, 299 U.S. at 255.

Here, though, where MSA and the Government are parties to both the district court action and the action before the Board, each of those parties "will be responsible for its own destiny in district court." *Hardrives, Inc.*, IBCA 2319, et al., 91-BCA ¶ 23,769. Whether we grant or deny the stay request here will have no real effect on third parties. Even though there are three defendants in the district court action in addition to MSA, the district court proceedings are moving forward without regard to the stay of proceedings (or lack thereof) here, and, because MSA is the only district court defendant before us, any decision that we might issue defining "commercial item" as it applies in the circumstances of this case would not bind those other defendants. *See Provident Tradesmen Bank & Trust Co. v. Patterson*, 390 U.S. 102, 110 (1968) ("[A] judgment is not res judicata as to, or legally enforceable against, a non-party."). Where third-party rights are not impacted by a stay request, the

CBCA 5095, 6685                                                                                                           6

burden remains on the party seeking a stay or seeking to continue an existing one, but it "is less than it would be if the parties to the proceedings were different." *Hardrives, Inc.*

<u>The Merits of DOE's Limited Request to Lift the Existing Stay</u>

The history of these appeals before the Board is important in considering how to proceed now. At the parties' request, we have stayed these appeals for the last four-and-a-half years, initially to avoid interfering first with the FCA investigation and then to allow the district court FCA litigation to proceed. In doing so, we accepted the parties' original rationale for the stay, which was to avoid the risk of interference with a potential criminal matter. *See Afro Lecon, Inc. v. United States*, 820 F.2d 1198 (Fed. Cir. 1987). Indeed, "it has long been the practice to 'freeze' civil proceedings when a criminal prosecution involving the same facts is warming up or under way." *Peden v. United States*, 512 F.2d 1099, 1103 (Ct. Cl. 1975). The FCA investigation ultimately resulted not in criminal indictments, but in the now-pending civil FCA action. Although the absence of a potential for criminal sanctions lessens concerns about the Board's potentially premature interference with proceedings in the district court, it does not eliminate them, particularly in light of the massive treble damages that the Government is seeking against MSA in the district court and the potential effect that a fraud judgment against MSA would have on our consideration of these appeals. *See Laguna Construction Co. v. Carter*, 828 F.3d 1364, 1372-73 (Fed. Cir. 2016) (affirming denial of claim based on fraud defense that was supported by criminal conviction in the district court); *J.E.T.S., Inc. v. United States*, 838 F.2d 1196, 1200-01 (Fed. Cir. 1988) (same); *AAA Engineering & Drafting, Inc.*, ASBCA 47940, et al., 01-1 BCA ¶ 31,256 (denying appeal based on fraud defense following final judgment against contractor in FCA district court action). The parties have previously reported that the issues before the Board and the district court are inextricably intertwined, both involving the same question of whether LMSI's services qualify as a commercial item, which makes it difficult to segregate these appeals from the district court action.

DOE's motivation for asking us now to lift the stay for a limited purpose is not entirely clear from its motion. It argues that "a limited dissolution of the stay to decide a matter a contract interpretation would be an effective use of time and effort as it would result in a determination that would significantly streamline two litigations." Respondent's Motion at 3-4. Yet, it does not identify anything that happened recently in the district court action that caused it to seek the Board's renewed involvement, and it is unclear to the Board how DOE's requested relief would streamline anything since it seems unlikely that the district court would be bound by any decision that the Board would issue on the "commercial item" issue. DOE's request to lift the stay is limited to only one of seven counts in MSA's complaint. Before a case pending at the Board is eligible for appeal to our appellate authority, the United States Court of Appeals for the Federal Circuit, the Board must issue

CBCA 5095, 6685 7

a "final decision" that resolves and disposes of all of the issues (to the extent not waived) raised in the contracting officer's final decisions underlying these appeals. *Garrett v. General Electric Co.*, 987 F.2d 747, 751 (Fed. Cir. 1993) (A board decision is "final" for purposes of appellate review once the board has "fully addressed all of the decisions . . . of the contracting officer then on appeal to the Board." (quoting *Dewey Electronics Corp. v. United States*, 803 F.2d 650, 658 (Fed. Cir. 1986))). Were we to resolve only the "commercial item" issue, as DOE requests, that decision could not ripen into a "final decision" until we addressed the six other counts in MSA's complaint that DOE is not asking us to address. Until and unless there is a final judgment in these appeals that could be considered res judicata on the matters pending before us, the district court would be bound by any decision that we issued. *See Commissioner of Internal Revenue v. Sunnen*, 333 U.S. 591, 597 (1948) (res judicata requires a "final judgment on the merits of a cause of action"); *Abbvie Deutschland GmbH & Co. v. Janssen Biotech, Inc.*, 759 F.3d 1285, 1295 (Fed. Cir. 2014) (requiring "a valid and binding final judgment" for application of collateral estoppel). As a result, it does not appear that our consideration of one issue in these appeals will necessarily reduce the district court's workload or the issues that it will have to decide.

DOE also argues that the normal considerations applicable to evaluating a stay request all favor lifting the existing stay now. It argues that, "[w]hen a related case is pending before another court, a trial court may also consider '(i) principles of comity, with the normal rules favoring the court in which a case is first filed, (ii) judicial economy, focusing, inter alia, on whether a stay is necessary to avoid duplicative litigation, and (iii) the motives of the party seeking the stay, with courts disfavoring stays where the movant is seeking to avoid adverse precedent.'" Respondent's Motion at 8 (quoting *Commonwealth Edison Co. v. United States*, 46 Fed. Cl. 29, 34 (2000)). DOE is correct that CBCA 5095 was filed before the district court action, but its argument that the first-in-time filing favors lifting the stay in the circumstances here is misplaced. The reason for favoring the first-filed suit is because it is more likely to be at a more advanced stage of development. Here, though, at DOE's request, the cases before us have been stayed for four-and-a-half years — virtually since their inception — so that the district court action could proceed first. Document discovery is supposed to have already finished in that action, and its fact discovery deadline is approaching. We cannot agree with DOE's assertion that the factors identified above favor moving forward now in these long-dormant appeals.

To the extent that, despite the lack of res judicata effect, DOE believes that our decision on the "commercial item" issue might influence the district court, nothing in the current record indicates that the district court wants our advice on that issue. If it does, it can request an advisory opinion from the Board under the authority of 41 U.S.C. § 7107(f), and the Board will respond appropriately. Under principles of comity, we decline to insert the Board into the district court proceedings without a request from the court itself.

CBCA 5095, 6685                                                                                          8

      Although we are denying DOE's current request to lift the stay, that does not mean that we intend to stay these appeals forever. Obviously, now that the district court's FCA trial is not scheduled to begin until May 2023, it appears unlikely that there will be any resolution of the FCA matter, absent a settlement between the parties, for at least another two years. We recognize that the delay in resolving these appeals occasioned by the existing stay of proceedings is lengthy, but the importance of allowing the fraud case to reach a final result, a goal that both parties had previously reported to us, overrides those concerns, at least for the time being, particularly in light of the very different stages of case development at the Board and in the district court. If there are further delays in the district court action, or if other circumstances change to warrant the Board's lifting of the stay in these appeals, either party may approach the Board to request that proceedings resume. In addition, if either party identifies discovery that will have to be taken in these appeals that is not being covered by discovery in the district court action, we would entertain a motion to permit that discovery under the umbrella of the Board appeals now so that, once the district court action is resolved, the Board may resolve these appeals in an expedited manner.

<u>Decision</u>

      DOE's motion for limited dissolution of the stay is **DENIED**, without prejudice to either party's right to request that the Board lift the stay if, at a future date, developments in the district court action warrant it or if discovery unrelated to that being undertaken in the district court action is necessary to develop these appeals. Consistent with the Board's prior order dated January 22, 2020, the parties shall file a joint status report regarding the status of the district court action every sixty days, beginning sixty days from the date of this order.

                                            _____
                                            HAROLD D. LESTER, JR.
                                            Board Judge